39 Cal.App.3d 205 (1974)
114 Cal. Rptr. 11
In re L.L., a Minor, on Habeas Corpus.
Docket No. 12699.
Court of Appeals of California, First District, Division One.
May 17, 1974.
*206 COUNSEL
Robert L. Walker for Petitioner.
F. Raymond Marks and Robert H. Mnookin as Amici Curiae on behalf of Petitioner.
Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, Robert R. Granucci and Ronald E. Niver, Deputy Attorneys General, for Respondent.
*207 OPINION
MOLINARI, P.J.
In this habeas corpus proceeding we issued an order to show cause directed to the medical director of Napa State Hospital the purpose of which was to inquire into the detention and confinement of petitioner, L.L., a minor, at said hospital.
We have been advised that subsequent to the hearing of the order to show cause in these proceedings the minor was released from Napa State Hospital and that following a dispositional hearing in the juvenile court he was placed on probation and returned to the custody of his parents. As a condition of probation the minor was directed to participate in an outpatient mental health therapy program. In view of these circumstances the Attorney General has requested that we discharge the order to show cause and dismiss these proceedings on the ground of mootness. We decline to do so on the basis that notwithstanding the minor's release from the state hospital the issues tendered in these proceedings present questions of general public interest and importance obviating mootness under the principle declared in County of Madera v. Gendron, 59 Cal.2d 798, 804 [31 Cal. Rptr. 302, 382 P.2d 342, 6 A.L.R.3d 555], and DiGiorgio Fruit Corp. v. Dept. of Employment, 56 Cal.2d 54, 58 [13 Cal. Rptr. 663, 362 P.2d 487].
The said minor, who is 16 years of age, was ordered by the juvenile court to be placed in Napa State Hospital following an adjudication making him a ward of the court pursuant to a petition and hearing thereon alleging that the minor was a person coming within the provisions of Welfare and Institutions Code section 601.[1]
The minor first came within the jurisdiction of the juvenile court at the age of nine when he was found to be a dependent child of the court under a petition alleging poor nutrition and physical care. Since that time he has continuously been within the jurisdiction of the juvenile court either as a person subject to adjudication as a dependent child pursuant to Welfare and Institutions Code section 600 or as a person coming within the provisions of Welfare and Institutions Code section 601. He has never committed an act which would be a crime if done by an adult nor has he *208 ever been found to be a delinquent within the meaning of Welfare and Institutions Code section 602.[2]
In prior juvenile court proceedings the minor had been referred to a psychiatric clinic for a psychiatric examination and evaluation. His condition had been diagnosed as "depressive reaction, chronic" and it was recommended to the court by two psychiatrists that a program conducted at Napa State Hospital would be most beneficial for the minor. The goals of the program were stated to be "achievement, school and building a positive self-image." On the basis of this report the court made its order on April 5, 1973, placing the minor in Napa State Hospital. While at the hospital the minor ran away from the institution on at least two occasions. This conduct precipitated the proceedings to have him declared a ward of the juvenile court pursuant to section 601.[3] On August 16, 1973, the minor was declared a ward of the juvenile court.
In its order declaring the minor to be a ward of the court the juvenile court ordered that "the prior commitment to the Chief Probation Officer for out-of-home placement is to remain in effect. [¶] ... that the minor is to be placed in Napa State Hospital; that the matter is continued to January 4, 1974, for progress report." Pursuant to this order the minor was returned to Napa State Hospital where he was confined until his release on March 26, 1974.
The petition for a writ of habeas corpus alleges that at no time has the minor, or either of his parents, consented to his confinement in Napa State Hospital; that consent was solicited from the minor's father but was explicitly refused; and that the minor was "signed into" Napa State Hospital by a deputy probation officer.
The petitioner further alleges that he is not "gravely disabled"; that at no time was he ever informed by the court, by his probation officer, by his court-appointed counsel, or by anyone else, that he had a right to invoke the conservatorship procedure available in the Lanterman-Petris-Short Act (§§ 5000-5401) (hereinafter referred to as the "Act") including the right to a jury trial on the issue of whether or not he is "gravely disabled" as a result of a mental disorder; that had he been advised of these rights he would have speedily invoked them and would have requested a jury trial; and that as a result of his unlawful confinement he is suffering restrictions *209 on his liberty, is being stigmatized as a result of his commitment to a mental institution, has been administered an anti-psychotic and tranquilizing drugs against his will; has been tied to his bed and compelled to wear pajamas for many weeks; and is suffering severe psychic and emotional harm.
The minor contends that he could only be treated involuntarily in a state mental institution as provided in the Act; that the procedures therein provided were not followed; and that the juvenile court acted in excess of its jurisdiction by ordering him committed to a state mental institution without following the procedures of the Act. The minor also contends that his commitment cannot be upheld as a "voluntary" commitment under section 6000 because neither he nor his parent has consented to the commitment.
We here observe that an involuntary detention or commitment under the Act may be had or ordered only where the person, "as a result of mental disorder, is a danger to others, or to himself, or gravely disabled, ..." (§§ 5150, 5152, 5200, 5250, 5300.) There is no contention in the present case that the minor, as a result of mental disorder, is a danger either to himself or to others. We also observe that no determination was ever made that the minor was gravely disabled as the result of a mental disorder and that he was not afforded the procedural safeguards provided for under the Act. Accordingly, the issue presented is whether the juvenile court has jurisdiction to order that a ward of the court be placed in a state mental hospital for treatment of a mental disorder under its juvenile court power or whether it was required in such a case to invoke the provisions and procedures of the Act.
In considering the issue presented we first observe that presently there is no provision in the Juvenile Court Law specifically providing for the commitment of juvenile court wards for mental illness. Under former section 703, which was a part of the Juvenile Court Law, the juvenile court was empowered to commit a minor to a state mental institution for not more than 90 days for observation and recommendations. If the minor was found to be affected with any mental illness, disorder or other mental disability for which the minor might be committed former section 703 directed the juvenile court to file a petition in the superior court for placement in any state institution. The statute provided, further, that the jurisdiction of the juvenile court over the minor was suspended during the time the minor was subject to the jurisdiction of the court in which the petition for commitment and the order of commitment was filed. (Former § 703.)
In 1965 section 703 was amended and the provisions alluded to in the *210 preceding paragraph were removed therefrom and placed in section 5725. (Stats. 1965, ch. 391, § 2, p. 1630, § 5, p. 1678.) Section 5725, entitled "Juvenile Court Wards," was then a part of the Welfare and Institutions Code providing for "Commitments and Admissions" and of the chapter specifically providing for "Judicial Commitments." (See Stats. 1965, ch. 391, at pp. 1644 and 1678.) Section 703, as amended, provided that if the juvenile court was in doubt concerning the state of mental health or the mental condition of the minor it could commit the minor to the Department of Mental Hygiene in the manner and under the conditions set forth in section 5725. The identical procedures formerly contained in section 703 were now to be found in section 5725. This situation continued until 1967 when section 5725 was repealed. (Stats. 1967, ch. 1667, § 36.5, p. 4107, operative July 1, 1969.) The subject procedures were then incorporated in section 6550. (Stats. 1967, ch. 1667, § 37, p. 4137, operative July 1, 1969.) In 1969 section 6550 was repealed. (Stats. 1969, ch. 722, § 51, p. 1446, operative July 1, 1969, effective Aug. 8, 1969.) Section 6550 was replaced by two new sections, 6550 and 6551, which were enacted concurrently with the Act. (Stats. 1969, ch. 722, §§ 52, 53, pp. 1447-1448, operative July 1, 1969, effective Aug. 8, 1969.) The Act was made operative on July 1, 1969.[4] (Stats. 1967, ch. 1667, § 36, p. 4074.) In 1970 section 703 was repealed in its entirety. (Stats. 1970, ch. 1627, § 4, p. 3440.)
Sections 6550 and 6551 are contained in that part of the Welfare and Institutions Code providing for "Judicial Commitments" (pt. 2 of div. 6) and are to be found in article 6 thereof entitled "Juvenile Court Wards." Section 6550 provides: "If the juvenile court, after finding that the minor is a person described by Section 600, 601 or 602, is in doubt concerning the state of mental health or the mental condition of the person, the court may continue the hearing and proceed pursuant to this article." The procedure referred to is that provided in section 6551 since this is the only section contained in the article other than section 6550.
Section 6551, in pertinent part, provides: "If the court is in doubt as to whether the person is mentally disordered or mentally retarded, the court shall order the person to be taken to a facility designated by the county and approved by the State Department of Health as a facility for 72-hour treatment and evaluation. Thereupon the provisions of Article 1 (commencing *211 with Section 5150) of Chapter 2 of Part 1 of Division 5 apply except that the professional person in charge of the facility shall make a written report to the court concerning the results of the evaluation of the person's mental condition. If the professional person in charge of the facility finds the person is, as a result of mental disorder, in need of intensive treatment, he may be certified for not more than 14 days involuntary intensive treatment if the conditions set forth in subdivision (c) of Section 5250 are complied with. Thereupon, the provisions of Article 4 (commencing with Section 5250) of Chapter 2 of Part 1 of Division 5 shall apply to the person. The person may be detained pursuant to Article 4.5 (commencing with Section 5260) or Article 6 (commencing with Section 5300) of Part 1 of Division 5 if the provisions of such articles apply to him. [¶] If the professional person in charge of the facility finds that the person is mentally retarded, the juvenile court may direct the filing in any other court of a petition for the commitment of a minor as a mentally retarded person to the State Department of Health for placement in a state hospital.... [¶] If the professional person in charge of the facility for 72-hour evaluation and treatment reports to the juvenile court that the minor is not affected with any mental disorder requiring intensive treatment or mental retardation, the professional person in charge of the facility shall return the minor to the juvenile court on or before the expiration of the 72-hour period and the court shall proceed with the case in accordance with the Juvenile Court Law.... [¶] The jurisdiction of the juvenile court over the minor shall be suspended during such time as the minor is subject to the jurisdiction of the court in which the petition for postcertification treatment of an imminently dangerous person or the petition for commitment of a mentally retarded person is filed or under remand for 90 days for intensive treatment or commitment ordered by such court."
The 72-hour treatment and evaluation procedures and the intensive treatment and commitment procedures specified in section 6551 for wards of the juvenile court whose mental condition is a matter of dubitation or who are found to be mentally disordered are those provided in the Act, as are the 72-hour treatment and evaluation procedures for wards of the juvenile court whose mental retardation is a matter of dubitation. With respect to a ward found to be a mentally retarded person by the 72-hour treatment and evaluation facility pursuant to the Act, the commitment procedures which the juvenile court may invoke under section 6551 are those provided in article 5 of part 2 of division 6 of the Welfare and Institutions Code (§§ 6500-6512). It should be noted here that a minor brought before a juvenile court under the Juvenile Court Law who appears to the court to be mentally retarded may have proceedings taken against *212 him pursuant to article 5 (§ 6500 et seq.) by a person directed to do so by the court either before or after adjudication by the juvenile court.[5] (See § 6512.) The latter proceeding comes into play, it seems from the wording of the statute, when the juvenile court is not in doubt as to whether the minor is mentally retarded. If it does have a doubt the proper proceedings are as provided in section 6551.
It is clear that the procedure for the evaluation of a ward of the juvenile court concerning whom the juvenile court is in doubt as to whether he is mentally disordered or mentally retarded is that provided for in section 6551. Accordingly, when such a doubt exists the juvenile court shall order the ward to the facility indicated in the Act for a 72-hour treatment and evaluation. (§§ 6551, 5150, 5151, 5152.) When the 72-hour period has elapsed the minor must be released from such facility if in the opinion of the person in charge of the facility the minor no longer requires evaluation and treatment. (§ 5152.) Upon the termination of the 72-hour period a minor who has received an evaluation may be certified for not more than 14 days of involuntary intensive treatment where the minor has been found to be, as a result of mental disorder, a danger to others, or to himself, or gravely disabled, and the facility is equipped and staffed to provide such treatment. (§ 5250.) Where, instead of being found to be mentally disordered, the minor is found to be mentally retarded, such finding must be communicated to the juvenile court, the minor is to be released to the custody of the juvenile court and that court may direct the filing of a petition in the superior court for the commitment of a minor as a mentally retarded person for placement in a state hospital. (§ 6551; see §§ 6502, 6509.)
Where the minor has been found to be mentally disordered and certified for the 14-day intensive treatment as provided in the Act, he may not be detained for more than 14 days and must be released at the end of 14 days unless the minor agrees to receive further treatment on a voluntary basis or unless he is confined for postcertification treatment or recommended for conservatorship.[6] (§ 5254.)
The Act provides that a conservator of the person, or of the person and estate, may be appointed for any person who is gravely disabled as a result of mental disorder (§§ 5350, 5355; see § 5361 as to duration of conservatorship), and provides that a conservatorship may be recommended *213 by the professional in charge of an agency providing comprehensive evaluation or a facility providing intensive treatment who has determined that a person in his care is gravely disabled as a result of mental disorder and is unwilling to accept, or incapable of accepting, treatment voluntarily. (§ 5352.) A conservator who is qualified and appointed has certain general powers and such additional powers as the court may designate (see §§ 5353, 5357); and he has the right, if specified in the court order, to place his conservatee in a medical, psychiatric, nursing, or other state-licensed facility, or a state hospital and other specified hospitals and nonmedical facilities. (§ 5358.) Subdivision (a) of section 5350 provides that "A conservator may be appointed for a gravely disabled minor." And, by virtue of the provisions of section 6551 minors subject to the jurisdiction of the juvenile court who have been certified for the 14-day period of intensive treatment may be recommended for conservatorship. (See § 5254.)
(1a) In the present case the juvenile court did not invoke the procedures provided for in section 6551 and those provisions of the Act made applicable by that statute; and no conservatorship proceeding was instituted as provided in the Act. Instead the juvenile court made a direct commitment of the minor to Napa State Hospital, a state hospital for the care and treatment of the mentally disordered. (See §§ 4100 and 7200.) Such care and treatment was not voluntarily accepted by the minor or his parents. Accordingly, if the propriety of the order committing the minor to Napa State Hospital must depend upon the authority of the juvenile court to certify the minor for involuntary care and treatment such order, for the reasons above discussed, was in excess of the powers of the juvenile court.
Before considering whether the minor's placement at Napa State Hospital may be justified on the basis that he is undergoing treatment on a voluntary basis, we consider the relevancy of section 5002. This section is declaratory of the legislative intent in the enactment of the Act. That statute provides that mentally disordered persons shall no longer be judicially committed and the persons mentally disordered shall receive services pursuant to the provisions of the Act. As originally enacted the statute provided that the Act "shall not be construed to repeal or modify laws relating to the commitment of mentally disordered sex offenders, narcotic drug addicts, habit-forming drug addicts, mentally abnormal sex offenders, mentally retarded persons, juvenile court wards, and mentally disordered criminal offenders." (Former § 5002; italics added.) The statute was amended in 1971 (Stats. 1971, ch. 1459, § 1, p. 2875) to delete the reference to "juvenile court wards" from the provisions of the last-quoted *214 part of section 5002, and the addition of the phrases "except as specifically provided in Penal Code Section 4011.6, or as specifically provided in other statutes." These amendments evince an intention on the part of the Legislature to include mentally disordered and mentally retarded juvenile court wards within the purview of the Act. The final proviso "as specifically provided in other statutes," clearly embraces within its scope sections 6550 and 6551 which are specific statutes applying to the detention, treatment and commitment of mentally disordered and mentally retarded wards of the juvenile court.
We do not find justification for the subject order of the juvenile court in several statutes contained in the Juvenile Court Law. (§§ 727, 730, 739, subd. (c), and 741.) None of these statutes deal explicitly with the commitment or placement of minors in a state mental hospital. (2) When two statutes, one general and one specific, relate to the same subject matter, the specific statute controls unless a contrary legislative intent is clearly expressed. (People v. Gilbert, 1 Cal.3d 475, 479 [82 Cal. Rptr. 724, 462 P.2d 580]; In re Williamson, 43 Cal.2d 651, 654 [276 P.2d 593].) (1b) There is no express provision by the Legislature that the general provisions of the Juvenile Court Law take precedence over the more specific provisions of the Act and more particularly to sections 6550 and 6551, the specific statutes dealing with the evaluation, detention and commitment of juvenile court wards whose mental health or mental condition is a matter of concern for the juvenile court.
Sections 727 and 730 are broad dispositional statutes providing that the juvenile court may make any and all reasonable orders for the care, supervision, custody, conduct, maintenance, medical treatment and support of a minor adjudged to be a dependent child of the court within the purview of section 600 (§ 727) and a minor adjudged to be a ward of the court within the purview of section 601 (§ 730). Neither of these statutes authorize the placement of such minors in state mental hospitals. We apprehend that the term "medical treatment" has reference to the treatment of ailments and diseases, including mental illness, suffered by such child while under the jurisdiction of the juvenile court, and, with respect to mental illness, that it does not include treatment for mental illness that requires a formal commitment to a state mental hospital.[7]
Subdivision (c) of section 739 authorizes the juvenile court to order *215 medical, surgical, dental or other remedial care by licensed practitioners for a ward or dependent child "as may from time to time appear necessary" where there is no parent, guardian or person standing in loco parentis capable of authorizing or willing to authorize such care or treatment after due notice to such parent, guardian or person standing in loco parentis. This statute does not mention psychiatric care nor does it make any provision authorizing the juvenile court to place a minor in a state hospital. It follows the statutory sections which pertain to the dispositional orders of the juvenile court (e.g., §§ 725, 727, 730, 731). Its placement in the code and the words "as may from time to time appear necessary" manifest a legislative intent to allow the juvenile court to sanction treatment for specific medical or dental problems arising while the minor is within the care or custody of the probation officer. The section does not contemplate that the medical problem shall itself be the basis of the court's disposition of the minor. We observe, moreover, that the record does not disclose that the juvenile court purported to invoke the provisions of subdivision (c) of section 739.
Section 741 provides that in any case where a petition has been filed seeking to have a minor declared a dependent child or ward of the juvenile court, the court may order the probation officer to obtain the services of psychiatrists, psychologists, or other clinical experts as may be required to assist in determining the appropriate treatment of the minor. Although this section makes reference to the services of psychiatrists, this reference is only for the limited purpose of insuring the making of a meaningful treatment decision. That section does not authorize the placement of the minor in a state mental institution, nor does it mention such an institution.
The juvenile courts may well have the power to order psychiatric treatment of a ward pursuant to these statutes. But that does not permit an involuntary and indefinite commitment in a state mental institution. Rather, they permit the juvenile court to order psychiatric services short of what may only be implemented under the Act. While it may be true that there is a distinction between a person who is "mentally ill" and one who is "gravely disabled" as a result of mental illness, the determination whether a minor is a danger to others or himself or whether he is gravely disabled as a result of mental disorder must be made as provided in sections 6550 and 6551 as implemented by the specific provisions of the Act. If the minor is found not to be such a person he must be returned to the custody of the juvenile court for such disposition as may be appropriate within its general powers.
*216 (3) Adverting to the claim that the minor's commitment was "voluntary," we note that the basis for this claim is found in section 6000. This statute provides that the medical director of a state hospital for the mentally disordered or mentally retarded "may receive in such hospital, as a boarder and patient, any person who is a suitable person for care and treatment in such hospital, upon receipt of a written application for the admission of the person into the hospital for care and treatment...." The statute provides that "In the case of a minor person, the application shall be made by his parents, or by the parent, guardian, or other person entitled to his custody ..." and provides "If the minor has a conservator of the person, or the person and the estate, appointed under Chapter 3 (commencing with Section 5350) of Part 1 of Division 5, with the right as specified by court order under Section 5328 to place the conservatee in a state hospital the application for the minor shall be made by his conservator...."
Under the provisions of section 6000 "A minor person who is a voluntary patient may leave the hospital or institution after completing normal hospitalization departure procedures after notice is given to the superintendent or person in charge by the parents, or the parent, guardian, or other person entitled to the custody of the minor, of their desire to remove him from the hospital." A conservatee may make the same request. (§ 6000.)
In the instant case neither the minor nor his parents gave their consent to his placement in Napa State Hospital. The question presented is whether the phrase "or other person entitled to the custody of the minor" includes the chief probation officer in whose custody the minor has been placed pursuant to section 601. It is asserted that the placement of the minor in Napa State Hospital by such officer is "voluntary," notwithstanding the minor's objections and those of his parents, because it is for the minor's best interests, as determined by the probation officer, to place him there.
We perceive that under the state of the record the minor's placement in Napa State Hospital was not a voluntary placement but one made upon order of the court. We apprehend that if the probation officer is a person entitled to the minor's custody he would not need an order of commitment. All that would be required under section 6000 is that he make a written application for admission. In the present case it is not contended, nor is there support therefor in the record, that such an application was made. Accordingly, it is clear that the minor's placement in Napa State Hospital was not made on the basis that it was a voluntary commitment under section 6000 but that it was made pursuant to an order of the juvenile *217 court. It becomes unnecessary, therefore, to consider whether the probation officer, as an agent of the juvenile court, is a "person entitled to the custody of the minor" so as to be entitled, pursuant to section 6000, to make a voluntary commitment of a minor who is a dependent child or ward of the juvenile court.
The order to show cause is discharged and a writ of habeas corpus is granted. The orders of April 5, 1973, and August 16, 1973, placing the minor in Napa State Hospital are vacated, the minor is ordered discharged from any detention under such orders, and all records in the possession of the juvenile court, hospitals and law enforcement authorities relating to said orders are ordered expunged.
Sims, J., and Elkington, J., concurred.
Respondent's petition for a hearing by the Supreme Court was denied July 10, 1974.
NOTES
[1] Welfare and Institutions Code section 601 provides: "Any person under the age of 18 years who persistently or habitually refuses to obey the reasonable and proper orders or directions of his parents, guardian, custodian or school authorities, or who is beyond the control of such person, or any person who is a habitual truant from school within the meaning of any law of this state, or who from any cause is in danger of leading an idle, dissolute, lewd, or immoral life, is within the jurisdiction of the juvenile court which may adjudge such person to be a ward of the court."
[2] Unless otherwise indicated all statutory references hereinafter made are to the Welfare and Institutions Code.
[3] The petition indicated that the minor claimed he was not insane, that he should not be locked up with all those "crazy people," and that he would again run away from that institution.
[4] When the Act was initially enacted in 1967 it was to become operative on the 61st day after the final adjournment of the 1968 Regular Session of the Legislature. (See Stats. 1967, ch. 1667, § 48, p. 4188.) Section 48 of the Act was amended in 1968 to provide that the Act was to become operative on July 1, 1969. (See Stats. 1968, ch. 989, § 3, p. 1928.) So, the effective date is July 1, 1969.
[5] In such a case the juvenile court proceedings are adjourned or suspended until a determination is made by the judicial commitment court as to whether the person is mentally retarded. (§ 6512.)
[6] See sections 5260, 5261, 5262, 5263, 5264, 5300, 5301, 5303 and 5304 re postcertification treatment.
[7] We consider the reference of the minor to a psychiatric clinic or to psychiatrists for treatment and evaluation as was done in this case prior to the order placing him in Napa State Hospital to be a proper exercise of the authority pursuant to sections 727 and 730.