[Crim. No. 18456. In Bank. Aug. 4, 1975.]

In re MICHAEL E., a Minor, on Habeas Corpus.

## COUNSEL

Robert G. Eckhoff, Public Defender, Gilbert W. Lentz, Deputy Public Defender, and Robert L. Walker for Petitioner.

George P. Kading, County Counsel, and Marvin Levine, Deputy County Counsel, for Respondent.

## OPINION

**WRIGHT, C. J.**—Petitioner, a ward of the juvenile court, is confined in the Camarillo State Hospital pursuant to an order of the juvenile court authorizing his placement in that institution for treatment of a mental health problem. He contends through counsel that his confinement was effected without compliance with protections afforded to persons committed in analogous situations to state mental hospitals (see Lanterman-Petris-Short Act, Welf. & Inst. Code, §§ 5000-5401), and that for such reason he is illegally restrained and is entitled to his discharge.[1] We conclude for reasons which follow that petitioner's writ of habeas corpus should be granted and that petitioner should be remanded to the juvenile court.

Petitioner, then 17 years of age, was declared a ward of the juvenile court on July 16, 1974, following the sustaining of a petition (§ 602) alleging that he had committed petty theft (Pen. Code, § 488) and had received stolen property (Pen. Code, § 496, subd. 1). A psychiatrist who acknowledged his lack of background information concerning petitioner reported prior to a dispositional hearing that his examination of petitioner disclosed "some degree of psychotic condition," and recommended further proceedings for a "more definitive opinion and treatment." A second psychiatrist expressed the opinion that petitioner had a "disturbed mental capacity in reality testing, with total lack of insight into the nature of his predicament, including a marked impairment of judgment, and that [petitioner] is psychotic at the level of a probable borderline schizophrenia, although there is the possibility that he may be suffering a form of psychosis secondary to overwhelming stresses from sources not obtainable at this time due to his inability to relate an adequate history."

---

[1] Unless otherwise specified all statutory references are to provisions of the Welfare and Institutions Code. Relevant provisions of the Lanterman-Petris-Short Act (hereinafter the LPS Act or the Act), which is part I of division 5 of the Welfare and Institutions Code, are set out *infra*. The legislative intent of the act is stated as follows: "(a) To end the inappropriate, indefinite, and involuntary commitment of mentally disordered persons and persons impaired by chronic alcoholism, and to eliminate legal disabilities; (b) To provide prompt evaluation and treatment of persons with serious mental disorders or impaired by chronic alcoholism; (c) To guarantee and protect public safety; (d) To safeguard individual rights through judicial review; (e) To provide individualized treatment, supervision, and placement services by a conservatorship program for gravely disabled persons; (f) To encourage the full use of all existing agencies, professional personnel and public funds to accomplish these objectives and to prevent duplication of services and unnecessary expenditures." (§ 5001.)

At the dispositional hearing on August 13, 1974, a juvenile court referee ordered that petitioner "be placed in the care and custody of the probation officer, for commitment to Camarillo State Hospital" and "instructed" the probation officer to deliver petitioner to that hospital. A petition for rehearing was filed and heard before a juvenile court judge. (§ 558.) Both a probation department psychiatric social worker and petitioner's father advised the court that they felt the placement was proper.[2] It was contended in behalf of petitioner that he could not be committed without compliance with the LPS Act. (See *In re L. L.* (1974) 39 Cal.App.3d 205 [114 Cal.Rptr. 11].) After receiving evidence on three different days and entertaining argument, the court, on September 5, signed a formal order which committed petitioner to the care and custody of the probation officer "for ultimate placement in a private or public facility, including . . . Camarillo State Hospital. . . ."[3]

On September 5, the probation officer, purportedly on petitioner's behalf, executed an application for "voluntary" admission to Camarillo State Hospital, and petitioner has since been confined there.[4]

Petitioner complains of the foregoing procedures on numerous statutory and constitutional grounds. Central to all of his complaints is the failure of the juvenile court to proceed in accordance with the LPS Act in effecting his commitment.[5] The failure of the court to have so proceeded

[2]Petitioner's father, in a letter to the court, stated: "I love my boy but I think he needs psychiatric treatments that he could get at the hospital. I am afraid that he will get himself in grave trouble if he does not get psychiatric treatments."

[3]The order further provided that "in the event said minor is received in Camarillo State Hospital as a voluntary patient pursuant to Section 6000 of said Welfare and Institutions Code, said minor shall not be actually confined therein for a period of more than six (6) months, and that this matter be placed on calendar for further disposition proceedings on the 180th day of actual confinement after said minor is received in Camarillo State Hospital."

[4]Petitioner personally objected, during the dispositional hearing, to his commitment to Camarillo State Hospital. The application includes a purported release of the State of California, the medical director and the staff of the hospital from responsibility for "unforeseen complications arising in the course of or resulting from this treatment procedure." The release was described as "temporary" in nature, pending the receipt of parental consent to treatment, which consent was received on September 13.

[5]Petitioner specifically complains that because his commitment was in fact involuntary, it could be accomplished only by a conservator whose appointment is governed by section 5350; that although a conservator may be appointed for a minor who is "gravely disabled" due to mental disorder (*id.*, subd. (a)), petitioner was entitled to a jury trial on that question (*id.*, subd. (d)). He also contends that he was entitled to be accorded any reasonable alternative to conservatorship following a complete investigation of such alternatives (§ 5354); that as one who has been subjected to the disabilities of a conservatee there should have been reserved for him the right to a rehearing as to his

is also claimed to have constituted a denial of petitioner's constitutional rights to a jury trial, to due process, and to equal protection of the laws.[6] Petitioner also contends that his commitment by the juvenile court could not have been authorized pursuant to section 6000 as that court is not a "person entitled to [petitioner's] custody" within the meaning of said section 6000.[7] Finally, petitioner claims that if section 6000 is construed to permit such a commitment it is unconstitutional because it authorizes long term commitments of minors without affording them an opportunity to show that he or she is not mentally ill or dangerous, or that such confinement is not reasonably necessary to any legitimate goal.

As the question of the applicability of the LPS Act will be seen to be determinative of petitioner's contentions, we give immediate considera-

status (§ 5364), and to an automatic termination of the conservatorship after one year (§ 5361).

[6]Petitioner contends that as one who is required to stand in the shoes of a conservatee he has a constitutional right to a jury trial on the question whether he was "gravely disabled;" that because he had no hearing on that question he was not accorded due process; and that he has been denied equal protection of the laws because LPS Act protections (see fn. 4, *supra*) are extended to other involuntary committees whose status cannot be rationally distinguished from his status.

[7]That section, not a part of the LPS Act, provides in pertinent part: "Pursuant to rules and regulations established by the State Department of Health, the medical director of a state hospital for the mentally disordered or mentally retarded may receive in such hospital, as a boarder and patient, any person who is a suitable person for care and treatment in such hospital, upon receipt of a written application for the admission of the person into the hospital for care and treatment made in accordance with the following requirements: (a) In the case of an adult person, the application shall be made voluntarily by the person, at a time when he is in such condition of mind as to render him competent to make it or, if he is a conservatee with a conservator of the person . . . with the right as specified by court order under Section 5328 to place his conservatee in a state hospital, by his conservator. (b) In the case of a minor person, the application shall be made by his parents, or by the parent, guardian, or other person entitled to his custody to any of such mental hospitals as may be designated by the Director of Health to admit minors on voluntary applications. If the minor has a conservator of the person . . . appointed under [provisions of LPS Act] with the right as specified by court order under section 5328 to place the conservatee in a state hospital the application for the minor shall be made by his conservator."

The reference in section 6000 to section 5328 is apparently in error. Section 5328 deals only with the confidentiality of information obtained in providing services under the LPS Act and other provisions of the Welfare and Institutions Code. The reference in section 6000 was undoubtedly intended to be to section 5358. That section provides that a conservator appointed pursuant to chapter 3 of the LPS Act (Conservator for Gravely Disabled Persons) "shall have the right, if specified in [the court order of appointment], to place his conservatee in a medical, psychiatric, nursing or other state-licensed facility, or a state hospital . . . ." Although it does not appear that the error in section 6000 has yet been corrected by the Legislature, a like error in section 6002 (admission to private hospital) has been recognized and corrected. The reference to section 5328 in section 6002 as amended in 1969 (Stats. 1969, ch. 722, § 47.1) was corrected to refer instead to section 5358 by amendment in 1970. (Stats. 1970, ch. 516, § 9.) We now read a similar correction into section 6000.

tion thereto. It was initially provided in section 5002 that the Act was not to "be construed to repeal or modify laws relating to the commitment of . . . juvenile court wards . . ." among other classifications of persons. (Stats. 1967, ch. 1667, p. 4075.) Section 5002, however, was amended in 1971 (Stats. 1971, ch. 1459, § 1, p. 2875) to delete the commitment of juvenile court wards from those classifications which theretofore had been exempt from the applicability of the Act.[8] ■ It thus follows that although laws relating to the commitment of mentally disordered wards of the juvenile court were at first intended to continue to be applied as exempt from the provisions of the Act, the 1971 amendment specifically extinguished that exemption. The Act must now be deemed to repeal or to modify laws as they relate to the commitment of juvenile court wards to the extent that such laws are inconsistent with provisions of the Act. (See *In re L. L., supra,* 39 Cal.App.3d 205, 213-214.) In making any judgment whether a particular law is inconsistent with the LPS Act, we necessarily must be guided by the mandatory direction in section 5002 that mentally disordered persons "shall" receive services pursuant to the Act.[9] ■ It follows, accordingly, that the actual commitment of a mentally disordered minor who is also a ward of the juvenile court can be accomplished *only* in accordance with the LPS Act. We next examine the question whether petitioner was so committed.

Our construction of the LPS Act as applied to juvenile wards does not preclude the application of other statutory procedures when such procedures are consistent with or are in accordance with the LPS Act. Such a procedure or procedures are set forth in sections 6550 and 6551. The first mentioned section provides that if a juvenile court "is in doubt concerning the state of mental health or the mental condition" of a ward,

[8]Section 5002 now provides: "Mentally disordered persons and persons impaired by chronic alcoholism may no longer be judicially committed.

"Mentally disordered persons shall receive services pursuant to this part. Persons impaired by chronic alcoholism may receive services pursuant to this part if they elect to do so pursuant to Article 3 (commencing with Section 5225) of Chapter 2 of this part.

"Epileptics may no longer be judicially committed.

"This part shall not be construed to repeal or modify laws relating to the commitment of mentally disordered sex offenders, mentally retarded persons, and mentally disordered criminal offenders, except as specifically provided in Penal Code Section 4011.6, or as specifically provided in other statutes."

[9]Section 5002 also expressly provides that mentally disordered persons "may no longer be judicially committed." However, we do not rely on that direction as ground for our conclusion that a juvenile court ward may not be committed in a manner inconsistent with the Act. The Act defines "judicial commitment" as a commitment in particular instances (i.e., mentally disordered sex offenders, narcotic drug addicts, habit-forming drug addicts, mentally abnormal sex offenders, mentally retarded persons, and persons committed pursuant to provisions of the Penal Code). (See § 5008.1.) The quoted language thus does not prohibit all judicial commitments.

the court may invoke procedures set out in section 6551. The latter section provides that upon court order, the ward shall be taken to an approved facility for 72-hour treatment and evaluation. Such treatment and evaluation procedures are nevertheless expressly required to be conducted in accordance with provisions of the LPS Act. (Ch. 2, art. 1, Detention for Evaluation and Treatment, §§ 5150-5156.) If the professional person in charge of the approved facility finds that, as the result of a mental disorder, the ward is in need of intensive treatment he may be "certified" for not more than 14 days of involuntary intensive treatment if the particular facility is able to comply and thereafter does comply with certain specified requirements of the LPS Act. (Ch. 2, art. 4, Certification for Intensive Treatment, §§ 5250-5258.) The ward may be detained for an additional 14-day period of intensive treatment if, during the first 2-week period or the 72-hour evaluation period, he exhibits suicidal tendencies. Such further detention and the procedures to be followed during the additional period must also comply with the provisions of the Act. (Ch. 2, art. 4.5, Additional Intensive Treatment of Suicidal Persons, §§ 5260-5268.) Thereafter the ward may be further detained for an additional 90-day period if, upon a petition by the professional person in charge of the facility, it is judicially determined and certified that the ward is an imminently dangerous person. Again, the procedures for certification must be in accordance with provisions of the LPS Act. (Ch. 2, art. 6, Postcertification Procedures for Imminently Dangerous Persons, §§ 5300-5306.) Provision is also made in the Act for judicial recertification for additional 90-day periods if the person has threatened, attempted, or actually inflicted physical harm on another during the period of postcertification treatment and if he presents an imminent threat of substantial physical harm to others. (§ 5304.)

■ The procedures authorized by sections 6550 and 6551 are manifestly nothing more than express statutory direction to initiate LPS Act procedures in a context wherein a juvenile court entertains "doubt" as to the mental health of one of its wards. (See *In re L. L., supra,* 39 Cal.App.3d 205, 210-213.) Although the initial stages of such detentions are for the relatively short periods of time designed to serve those exigent circumstances, successive detentions based on professional or judicial findings made in the course of treatment and evaluation may thereafter be imposed for a substantial cumulative period. Such consecutive detentions, however, are in all instances consistent with the procedures authorized by the Act. We thus conclude that sections 6550 and 6551 are available for the evaluation and treatment of a mentally disordered ward

of the juvenile court although those sections are not themselves incorporated as a part of the LPS Act.

It is apparent that the People in the instant case did not purport to proceed in accordance with sections 6550 and 6551. Petitioner was not referred to Camarillo State Hospital for a 72-hour treatment and evaluation but rather was committed to the care and custody of a probation officer for "ultimate placement" in a facility. The dispositional order suggested that placement in Camarillo State Hospital might be accomplished pursuant to section 6000 as a "voluntary patient" for a period as long as six months. (See fn. 3, *ante*.)

It is equally obvious that the People could not have lawfully authorized the commitment of petitioner pursuant to section 6000. That section (see fn. 7, *ante*) provides in subdivision (b) for the *voluntary* reception of a mentally disordered minor if application is made, among others, by a parent or by a person entitled to the minor's custody. In the instant case, there was filed a written consent to hospital treatment which was signed by petitioner's father. (See fn. 2, *ante*.) If we assume, arguendo, that such consent may be deemed an application by a parent in petitioner's behalf, this will be of no avail to the People. Although section 6000, subdivision (b), makes general provision for the commitment of "a minor person," it makes no specific provision for a minor who is a juvenile court ward. As we have seen, the commitment of a mentally disordered minor who is a ward of the juvenile court can be accomplished *only* in accordance with the LPS Act.[10] Significant protections afforded by the Act, as set out below, would be effectively by-passed if we were to conclude that a commitment pursuant to section 6000, subdivision (b) was, as in the case of procedures pursuant to sections 6550 and 6551, consistent with the Act.[11]

[10]We do not reach the further issue, argued, inter alia, by petitioner on due process and equal protection grounds, whether the commitment of a minor who is not a ward of a juvenile court can be accomplished upon the "voluntary" application of parent, guardian or other person entitled to the minor's custody.

[11]Section 6000, subdivision (b), further provides for the commitment of a minor for whom there has been appointed, in accordance with the LPS Act, a conservator who is vested with authority to place the minor in a state hospital. Although such a case is not now before us it appears that a commitment by such a conservator would be entirely consistent with the LPS Act. Our holding herein that the instant commitment could not lawfully have been made pursuant to section 6000, subdivision (b), is inapplicable to a conservator's placement pursuant to said section.

The order of the juvenile court also purports to vest custody of petitioner in the probation officer who, the People contend, is a "person entitled to [petitioner's] custody" with the right to make application for petitioner's voluntary commitment pursuant to

Section 6000, subdivision (b), if the basis for petitioner's detention, resulted in his commitment over objection without a formal hearing on the question whether his mental state was such as to require the appointment of a conservator. If it was determined that the ward's condition required such an appointment, the minor was not afforded the protection of such a conservator's involvement in the commitment proceedings.

The actual commitment of a minor ward of a juvenile court to a state hospital can be lawfully accomplished only through the appointment of a conservator who is vested with authority to place the minor in such a hospital. (LPS Act, ch. 3, §§ 5350-5370.) Such conservator may be appointed only for a "gravely disabled" minor who is entitled to a jury trial on the issue whether he is in fact "gravely disabled." (§ 5350, subds. (a), (d).)[12] Conservatorship shall be recommended to the court only if, on investigation, no suitable alternatives are available. (§§ 5352-5354.) The conservator's proposed powers and duties are to be recommended to the court. (§§ 5356, 5357, 5360.) A conservator may commit the minor to a medical facility, including a state hospital, only when specifically authorized by the court. (§ 5358.) Conservatorships automatically terminate at the end of one year (§§ 5361, 5362), and every six months a conservatee may petition for a rehearing as to his status (§ 5364). Finally, the entertainment of a petition

---

section 6000, subdivision (b). But the court, lacking the authority to directly commit one of its mentally disordered wards, cannot overcome that lack by an indirect route. The Legislature has denied the juvenile court the authority to commit such a ward, and the court cannot appoint a "custodian" with authority to do what by legislative direction the court cannot do. The probation officer could, of course, have undertaken to effect petitioner's commitment pursuant to the LPS Act. (§§ 5350-5370.) In no event, however, can a probation officer not additionally vested as a conservator be deemed a person having custody of a minor ward such as would vest the probation officer with authority to make application for a "voluntary" commitment within the meaning of section 6000, subdivision (b).

[12]"Gravely disabled" means, inter alia: "A condition in which a person, as a result of a mental disorder, is unable to provide for his basic personal needs for food, clothing, or shelter. . . .A person of any age group may be 'gravely disabled' under this definition." (§ 5008, subd. (h)(1).)

Although a minor may not be legally responsible to provide for his basic personal needs, or may suffer disabilities other than a mental disorder which preclude him from so providing, the definition is nevertheless applicable. A minor is "gravely disabled" within the meaning of section 5008, subdivision (h)(1), when the trier of fact, on expert and other testimony, finds that disregarding other disabilities, if any, the minor, because of the further disability of a mental disorder, would be unable to provide for his basic personal needs. Immaturity, either physical or mental when not brought about by a mental disorder, is not a disability which would render a minor "gravely disabled" within the meaning of section 5008.

for conservatorship is a function of the superior and not the juvenile court.[13]

None of the foregoing and other substantial protections were afforded petitioner in committing him to the Camarillo State Hospital. The commitment, accordingly, was not in accordance with the LPS Act and thus was unlawful.[14] The opinion of the Court of Appeal in *In re M. J. E.* (1974) 43 Cal.App.3d 792 [118 Cal.Rptr. 398] is disapproved.[15]

 Let a writ of habeas corpus issue. The dispositional order of September 5, 1974, is vacated and petitioner is ordered discharged from any detention and commitment under such order. Petitioner is remanded to the juvenile court.

McComb, J., Tobriner, J., Sullivan, J., Clark, J., and Richardson, J., concurred.

---

[13]Although petitioner in this case falls within the jurisdiction of the juvenile court as a ward thereof by reason of the commission of acts in violation of criminal statutes (§ 602; see also § 601), minors who fall within the jurisdiction of the juvenile court as dependents thereof by reason of the existence of one or more of the conditions described in section 600 are to be accorded no different legislative treatment under the pertinent statutes, and they are entitled to the same benefits of the LPS Act.

[14]No provision in the Juvenile Court Law provides for the commitment of mentally disordered wards. (Cf. §§ 727, 730, 739, subd. (c), and 741.) We agree with and approve the analysis of the applicability of provisions of the Juvenile Court Law as set out in *In re L. L., supra*, 39 Cal.App.3d 205, (1) beginning with the third full paragraph on page 209 and ending with the first paragraph on page 210, and (2) beginning with the second full paragraph on page 214 and ending on page 215.

[15]The disapproved opinion is the Court of Appeal opinion in the, instant case. It appears as a published opinion because petitioner's counsel did not seek a hearing in this court following a denial of a petition for writ of habeas corpus by the Court of Appeal, but instead sought an original writ here upon which our order to show cause issued. We disapprove of such procedures. Not only is rebriefing wasteful, but published opinions remain in the books even when, as in this case, a hearing would have been granted, thus compounding the problems of courts and practitioners in researching the law.