[Crim. No. 16740. First Dist., Div. Two. June 9, 1977.]

In re MICHAEL D., a Minor, on Habeas Corpus.

## COUNSEL

Paul N. Halvonik, State Public Defender, Clifton R. Jeffers, Chief Assistant State Public Defender, Ezra Hendon and Peter R. Silten, Deputy State Public Defenders, for Petitioner.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, Robert R. Granucci and Ronald E. Niver, Deputy Attorneys General, for Respondent.

## OPINION

**KANE, J.—** Petitioner, a 17-year-old dependent ward of the juvenile court confined in Napa State Hospital upon the application of his guardian, Dorothy Murphy, Division Supervisor of Family and Children Services, City and County of San Francisco, seeks a writ of habeas corpus, contending that he is unlawfully restrained of his liberty.[1]

The record shows that petitioner was adjudged a dependent ward of the juvenile court on April 17, 1964, and that his dependency status continued until August 31, 1976, when, on the verified petition of Dorothy Murphy, the Superior Court of the City and County of San

---

[1]This matter comes before us, following our denial of a petition for writ of habeas corpus, upon the Supreme Court's order that the Medical Director of the Napa State Hospital show cause before this court why the relief prayed for should not be granted, in light of *In re Michael E.* (1975) 15 Cal.3d 183 [123 Cal.Rptr. 103, 538 P.2d 231].

We have been advised that while petitioner's application for a writ was pending in the Supreme Court, he was removed from the hospital and placed in a foster home; nonetheless, because of the stigma involved in placement in a mental institution, we decline to consider the matter moot and proceed to determine the matter on the merits.

Francisco entered an ex parte order appointing her temporary guardian of the person of petitioner with the powers of a general guardian. On September 2, 1976, Dorothy Murphy, acting pursuant to the powers granted to her by the court, utilized the provisions of section 6000, subdivision (b), of the Welfare and Institutions Code[2] to make application for petitioner's admission to Napa State Hospital.

On October 7, 1976, the Public Defender for the City and County of San Francisco, acting on behalf of petitioner, objected to the appointment of a general guardian on the grounds that petitioner was not gravely disabled as a result of mental disorder or impairment, that it was not necessary that petitioner be placed in a closed psychiatric setting for treatment, and that a guardianship under the Probate Code was not a proper vehicle for the placement of a minor in a state hospital for treatment against the will of the minor. The public defender also contended that because petitioner was being subjected to involuntary treatment, he should be entitled to a jury trial as required under the Lanterman-Petris-Short Act (hereafter LPS Act).

On October 14, 1976, petitioner's motion for jury trial having been denied, a hearing was held by the court on the matter of the guardianship of petitioner's person. It was stipulated that petitioner's father was deceased, and that his mother's presence was not known and had not been known since 1969. At the hearing, testimony was taken from Dr. Ulrich Berg, an adult and child psychiatrist at McAuley Institute, and portions of petitioner's discharge summary from McAuley Institute prepared by Dr. Summers were admitted into evidence. Testimony was also taken from Dr. Peter Van Auken, a staff psychiatrist at Napa State Hospital, who had followed petitioner's progress since his admission. Dr. Van Auken diagnosed petitioner's condition as "Acute schizophrenia," which was treated primarily with tranquilizing medication. According to Dr. Van Auken, petitioner objected to taking medication and to being confined in the facility. Dr. Van Auken also testified that petitioner was not "gravely disabled" within the meaning of the LPS Act, and that he would not recommend him for a conservatorship.

The city attorney argued that petitioner had no parents or guardian, that he was in need of a residential treatment program, that there was none available except for the Napa program, and that it was in the

---

[2]Unless otherwise stated, all statutory references will be to the Welfare and Institutions Code.

child's best interest that a guardianship be granted and that he be voluntarily committed to Napa until such time as he reached 18, or until such time as the doctors found that he could be placed elsewhere.

The public defender, relying upon *In re Michael E.* (1975) 15 Cal.3d 183 [123 Cal.Rptr. 103, 538 P.2d 231], argued that petitioner could not be committed to a mental institution except under a proceeding initiated pursuant to the LPS Act.

On October 22, 1976, the court ruled that "it's in the best interest of Michael that the petition be granted, so the petition will be granted. . . ."[3]

Petitioner contends that section 6000, subdivision (b), is unconstitutional in that it violates due process of law and denies petitioner equal protection of the laws; and, alternatively, that the city has used the provisions of the Probate and Welfare and Institutions Codes to evade the effect of *In re Michael E.* and to deny petitioner the protection of the LPS Act. The latter contention is dispositive of this matter.

Section 6000, as relevant to the issue before us, reads: "Pursuant to rules and regulations established by the State Department of Health, the medical director of a state hospital for the mentally disordered or mentally retarded may receive in such hospital, as a boarder and patient, any person who is a suitable person for care and treatment in such hospital, upon receipt of a written application for the admission of the person into the hospital for care and treatment made in accordance with the following requirements: . . .

"(b) *In the case of a minor person, the application shall be made by his parents, or by the parent, guardian, or other person entitled to his custody* to any of such mental hospitals as may be designated by the Director of Health to admit minors on voluntary applications. . . . [¶] Any such person received in a state hospital shall be deemed a voluntary patient. . . ."

■ Here, as in *Michael E., supra,* page 191, footnote 10, we need not reach the issue of the constitutionality of subdivision (b) as it relates to the admission of a minor into a state mental hospital upon the

---

[3]Probate Code, section 1406, provides that "In appointing a general guardian of a minor, the court is to be guided by what appears to be for the best interest of the child . . . ."

application of a parent or guardian, for we have concluded that under the holding of *In re Michael E.,* a mentally disordered minor *who is also a ward of the juvenile court,* may not be committed by a guardian under the provisions of that section.

*In re Michael E.* involved a 17-year-old ward of the juvenile court who was confined in the Camarillo State Hospital pursuant to an order of the juvenile court, which committed him to the care and custody of a probation officer " 'for ultimate placement in a private or public facility, including . . . Camarillo State Hospital. . . .' " The probation officer, acting on petitioner's behalf, immediately executed an application for " 'voluntary' " admission to Camarillo State Hospital.

In his habeas corpus petition, Michael E. contended (1) that his confinement was effected without compliance with protections afforded to persons committed in analogous situations to state mental hospitals (§§ 5000-5401), and that the failure of the juvenile court to proceed under the LPS Act was a denial of his constitutional right to a jury trial, to due process, and to equal protection of the laws; (2) that his commitment by the juvenile court could not have been authorized pursuant to section 6000, as the juvenile court was not a " 'person entitled to [petitioner's] custody' " within the meaning of that section; and finally (3) that if section 6000 is construed to permit such a commitment, it is unconstitutional because it authorizes long term commitments of minors without affording them an opportunity to show that they are not mentally ill or dangerous, or that such confinement is not reasonably necessary to any legitimate goal (*In re Michael E., supra,* pp. 187-188).

The court concluded that the first contention, i.e., the applicability of the LPS Act, was determinative, as follows: "As the question of the applicability of the LPS Act will be seen to be determinative of petitioner's contentions, we give immediate consideration thereto. It was initially provided in section 5002 that the Act was not to 'be construed to repeal or modify laws relating to the commitment of . . . juvenile court wards . . .' among other classifications of persons. (Stats. 1967, ch. 1667, p. 4075.) Section 5002, however, was amended in 1971 (Stats. 1971, ch. 1459, § 1, p. 2875) to delete the commitment of juvenile court wards from those classifications which theretofore had been exempt from the applicability of the Act. It thus follows that although laws relating to the commitment of mentally disordered wards of the juvenile court were at first intended to continue to be applied as exempt from the provisions of

the Act, the 1971 amendment specifically extinguished that exemption. The Act must now be deemed to repeal or to modify laws as they relate to the commitment of juvenile court wards to the extent that such laws are inconsistent with provisions of the Act. (See *In re L.L., supra,* 39 Cal.App.3d 205, 213-214 [114 Cal.Rptr. 11].) In making any judgment whether a particular law is inconsistent with the LPS Act, we necessarily must be guided by the mandatory direction in section 5002 that mentally disordered persons 'shall' receive services pursuant to the Act. *It follows, accordingly, that the actual commitment of a mentally disordered minor who is also a ward of the juvenile court can be accomplished only in accordance with the LPS Act. . . .*" (Pp. 188-189; italics partially added.) The court found that Michael E. had not been committed in accordance with the LPS Act, and, further, that the commitment of petitioner was not authorized by section 6000, since subdivision (b) of that section *made no specific provision for a minor who is a juvenile court ward,* and that significant protections afforded by the act would be by-passed by permitting such a procedure (p. 191).

█ The court set forth the procedures to be used for the commitment of a minor ward of a juvenile court to a state hospital as follows: "*The actual commitment of a minor ward of a juvenile court to a state hospital can be lawfully accomplished only through the appointment of a conservator who is vested with authority to place the minor in such a hospital.* (LPS Act, ch. 3, §§ 5350-5370.) . . . Such conservator may be appointed only for a 'gravely disabled' minor who is entitled to a jury trial on the issue whether he is in fact 'gravely disabled.' (§ 5350, subds. (a), (d).) Conservatorship shall be recommended to the court only if, on investigation, no suitable alternatives are available. (§§ 5352-5354.) The conservator's proposed powers and duties are to be recommended to the court. (§§ 5356, 5357, 5360.) A conservator may commit the minor to a medical facility, including a state hospital, only when specifically authorized by the court. (§ 5358.) Conservatorships automatically terminate at the end of one year (§§ 5361, 5362), and every six months a conservatee may petition for a rehearing as to his status (§ 5364). . . . Finally, the entertainment of a petition for conservatorship is a function of the superior and not the juvenile court." (P. 192; italics added.)

The medical director, represented by the office of the Attorney General, has consistently sought to distinguish this case from *In re Michael E.* by pointing out that the admission of Michael E. was unlawfully accomplished upon the application of the probation officer in whose custody the juvenile court had placed the minor ward, in contrast

to petitioner's admission, assertedly lawfully accomplished upon the application of a duly appointed guardian.[4]

However, the medical director has overlooked a footnote in *In re Michael E.,* where the court made the following comment: "The order of the juvenile court also purports to vest custody of petitioner in the probation officer who, the People contend, is a 'person entitled to [petitioner's] custody' with the right to make application for petitioner's voluntary commitment pursuant to section 6000, subdivision (b). *But the court, lacking the authority to directly commit one of its mentally disordered wards, cannot overcome that lack by an indirect route.* The Legislature has denied the juvenile court the authority to commit such a ward, and the court cannot appoint a 'custodian' with authority to do what by legislative direction the court cannot do. The probation officer could, of course, have undertaken to effect petitioner's commitment pursuant to the LPS Act. (§§ 5350-5370.) *In no event, however, can a probation officer not additionally vested as a conservator be deemed a person having custody of a minor ward such as would vest the probation officer with authority to make application for a 'voluntary' commitment within the meaning of section 6000, subdivision (b)."* (Pp. 191-192, fn. 11; italics added.)

█ █ Although the admission of petitioner upon the application of his guardian appears on its face to comport with the provisions of section 6000, subdivision (b), on closer analysis we reach the conclusion that the juvenile court, lacking the authority to directly commit one of its mentally disordered wards, may not overcome that lack by the indirect route used in this instance, i.e., by resort to the guardianship provisions of the Probate Code, in order to turn an existing "custodian" into a *guardian* for purposes of making application for "voluntary" admission of the minor pursuant to the provisions of section 6000, subdivision (b). We are compelled, therefore, to conclude that the city, by the device of obtaining the appointment of one of its own officials as guardian of a minor ward of the juvenile court, has evaded the application of the rule of *In re Michael E.,* and has accomplished indirectly that which is directly prohibited, i.e., the commitment of a minor ward of a juvenile court to a state mental hospital without compliance with the provisions of the LPS

---

[4]Probate Code, section 1500, as amended by Statutes 1976, chapter 1357, section 14, operative July 1, 1977, expressly deprives a guardian of power to place a minor in a mental health treatment facility by any procedure other than the LPS Act, but that provision is not applicable to this proceeding.

Act. "Significant protections afforded by the Act . . . [have thereby been] effectively by-passed." (*In re Michael E., supra,* 15 Cal.3d at p. 191.)

Let a writ of habeas corpus issue. The orders granting letters of guardianship to Dorothy Murphy are vacated, and petitioner is ordered discharged from any detention made pursuant to such orders. Petitioner is remanded to the juvenile court.

Taylor, P. J., and Rouse, J., concurred.