[Civ. No. 46113. First Dist., Div. One. July 26, 1979.]

THE PEOPLE, Petitioner, v.
THE SUPERIOR COURT OF HUMBOLDT COUNTY, Respondent;
JOHN D., a Minor, Real Party in Interest.

**COUNSEL**

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, Robert R. Granucci and Herbert F. Wilkinson, Deputy Attorneys General, for Petitioner.

No appearance for Respondent.

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, and David Lew, Deputy State Public Defender, for Real Party in Interest.

**OPINION**

**NEWSOM, J.**—The People petition for an alternative writ of mandate to compel respondent court to set aside two parts of its order of January 17, 1979, which (1) dismissed a petition to have the real party in interest declared a ward of the juvenile court under Welfare and Institutions Code section 602;[1] and (2) sustained a petition to declare the minor a dependent child of the court pursuant to section 300, subdivision (c).

The original petition alleged that the minor was within the juvenile court's jurisdiction under section 602—which in essence provides wardship for juvenile criminal offenders—in that he had committed murder in violation of Penal Code section 187. This petition was sustained, and a finding made that the minor had committed second degree murder. The court also ordered the matter continued for consideration of the minor's sanity at the time of the offense. While these proceedings were pending, the minor's parents filed a petition under section 300, subdivision (c), to have him declared a *dependent* child of the court, alleging that, because of mental disorders, he presented a danger to the public.

On December 12, 1978, the court, at its scheduled continued hearing, found the minor legally insane both presently and at the time of the offense, setting January 17, 1979, as the date for a dispositional hearing. At the latter hearing the court sustained the section 300, subdivision (c), dependency petition, ordered the minor placed in the Napa State Hospital, pursuant to section 702.3, and dismissed the section 602 wardship petition on grounds that the allegations therein were untrue because of the minor's insanity.

Petitioner does not contest the section 702.3 commitment, but argues that such commitment must be based on the court's jurisdiction over the minor as a ward rather than as a dependent child, i.e., that the court exceeded its jurisdiction by ordering the section 702.3 commitment under section 300, subdivision (c), rather than section 602.

---

[1] All references are to the Welfare and Institutions Code, unless otherwise designated.

As will be seen from the discussion below, the question is not merely technical, but poses questions of law with important ramifications respecting treatment of juvenile offenders.

Before reaching the central jurisdictional question, however, we deem it necessary to consider several preliminary matters, which we treat in an order promotive of convenient discussion.

I

*Is Mandamus an Appropriate Remedy?*

■ We are convinced that petitioner lacks a "plain, speedy and adequate remedy in the ordinary course of law" within the meaning of Code of Civil Procedure section 1086, and that mandamus is the appropriate procedure.

Had the section 602 petition been finally sustained, the People could have filed for modification under section 777, subdivision (a). Here, however, it was dismissed in the belief, apparently, that the finding of insanity required the dismissal and that section 300, subdivision (c), proceedings were necessary to insure the court's continuing jurisdiction. Also, a petition for modification—in both wardship and dependency cases[2]—requires the allegation that the court's order has not resulted in effective care of the minor. No such allegation is here made, or intended. Finally, section 388 permits modification of dependency orders for "changed circumstances or new evidence," and is inapposite in the present circumstances where no such contentions are or could reasonably be made.

Nor, we think, does petitioner have a right of appeal since section 800 limits such right to cases in which the minor has been declared to be within the court's section 602 jurisdiction.[3] Similarly, California Rules of

---

[2]See section 387.

[3]In relevant part, section 800 provides: "A judgment or decree of a juvenile court or final order of a referee which becomes effective without approval of a judge of the juvenile court assuming jurisdiction and declaring any person to be a person described in Section 601 or 602, or on denying a motion made pursuant to Section 567, may be appealed from in the same manner as any final judgment, and any subsequent order may be appealed from as from an order after judgment; . . ."

California Rules of Court, rule 1396(a), provides in part: "In proceedings under section 601 or 602, the minor may appeal from any judgment, order or decree specified in section 800. The parent or guardian may appeal from any judgment, order or decree specified in section 800 in which the minor is removed from the physical custody of the *parent* or *guardian*. . . ." (Italics added.)

Court, rule 1396(a), which is a restatement of section 800,[4] confers no prosecutorial right of appeal from an order dismissing a section 602 petition.

A judgment or decree of dependency under section 300 is made appealable by "the petitioner, the minor, and the parent or guardian" (Cal. Rules of Court, rule 1396(b) [restating § 395]), but the "petitioner" in such proceedings is ordinarily the probation officer, not the prosecutor. Section 325 provides: "A proceeding in the juvenile court to declare a minor a dependent child of the court is commenced by the filing with the court, by the probation officer, of a petition, in conformity with the requirements of this article." (Compare § 650, subd. (b), which charges the prosecuting attorney with filing the petition in a § 602 proceeding.) Moreover, ordinarily an appeal by a prosecutor would be from a dismissal of rather than an order sustaining the dependency proceeding.

There are other reasons for our conclusion that mandamus is the proper method of seeking review of the subject orders, and that all criteria for issuance of the writ have been established.

It is true that where the Legislature has not granted the People a right of appeal from a determination in a criminal case, review may not generally be had by extraordinary writ. (*People* v. *Superior Court (Levy)* (1976) 18 Cal.3d 248, 251-252 [133 Cal.Rptr. 624, 555 P.2d 633]; *People* v. *Superior Court (Howard)* (1968) 69 Cal.2d 491, 499 [72 Cal.Rptr. 330, 446 P.2d 138].) There are exceptions, however, as that noted in *Howard, supra,* where the trial court has exceeded its jurisdiction in the traditional sense of acting without personal or subject matter jurisdiction. This dictum is in effect adopted by *Levy, supra,* as well. (Cf. 18 Cal.3d 248 at p. 252.)

We find the jurisdictional analogy to be—if not exact—at least persuasive. The proceedings here are not, of course, strictly criminal in nature (§ 203), and we are not in all respects bound by the rules on criminal appeal, particularly where constitutional procedural questions are not in question. But the central question of whether a minor's commitment under section 702.3 may be based on section 300, subdivision (c), or must rest on a finding of wardship, is, at least in part, one of jurisdiction.

Before granting the writ, however, we must also find that it is, in the language of a leading case authority, "necessary to protect a substantial right and [then] only when it is shown that some substantial damage will

---

[4]Compare California Rules of Court, rule 1301(c).

be suffered by petitioner if said writ is denied." (*Parker* v. *Bowron* (1953) 40 Cal.2d 344, 351 [254 P.2d 6].)

Petitioner suggests that both these elements are inherent in the "profound shock to the public's interest" attendant upon dismissal of the section 602 petition, and in the prospect that, having been declared a dependent rather than a ward, the minor will escape the social stigma attached to criminal acts. We find, however, a more compelling interest involving the practical consequences of permitting a procedure which could encourage extraneous judicial proceedings and promote uncertainty in the future handling of such cases as that at bar.

For example, by declaring the minor a section 300, subdivision (c), dependent, the court bound itself to order periodic review pursuant to section 366,[5] together with probation reports, in order to determine whether its continued jurisdiction would be warranted. By virtue of the same order, however, the court also purportedly invoked the provisions of Penal Code sections 1026[6] and 1026a, which provide, respectively, for release upon a finding of restoration of sanity, and a method of application for release upon that ground. But under the latter section when a person has been found *not* guilty of a crime by reason of insanity, his continued confinement becomes dependent upon his sanity or lack of same, with no provision for the automatic or periodic review provided by sections 300 and 366.

And there is another defect latent in the court's process, because, if a section 702.3 commitment cannot properly be based upon the court's jurisdiction under section 300, subdivision (c), then the minor, being illegally confined, could petition for and be granted emancipation based upon a writ of habeas corpus—to the obvious present detriment of public safety.

For all of these reasons, and because the public has a clear interest in seeing its legislative purposes properly implemented, we find that the present petition presents a question of substantial right warranting mandamus review.

---

[5]Section 366 provides in pertinent part: "Every hearing in which an order is made adjudging a minor a dependent child of the juvenile court pursuant to Section 300 and every subsequent hearing in which such an order is made, except a hearing at which the court orders the termination of its jurisdiction over such minor, shall be continued to a specific future date not more than one year after the date of such order . . . and the probation officer shall make an investigation, file a supplemental report and make his recommendation for disposition."

[6]As applicable under section 702.3.

II

*Is Jurisdiction Based Upon Section 300*
*Defective Because the Petition Was Filed*
*by Improper Parties?*

■ Under section 325, the probation officer is charged with commencing a section 300 proceeding by the filing of a petition with the juvenile court. Section 329 permits *other* persons to "request" the probation officer to initiate such proceedings, and, under section 331, should the probation officer fail or refuse to file, the party requesting filing may personally apply to the juvenile court for review of the probation officer's decision. The court may, if it deems the failure to file to be erroneous, order the commencement of section 300 proceedings.

Petitioner here argues that since the minor's parents, and not the probation officer, filed the section 300, subdivision (c), petition—thus bypassing the procedure outlined in sections 329 and 331—the juvenile court lacked jurisdiction to make any order pursuant to the dependency petition. Assuming, arguendo, that dismissal of the section 602 petition removed the court's jurisdiction under that section, we proceed to a consideration of this question.

A similar provision requiring the probation officer to file a petition in juvenile court has been viewed as merely directory and hence not jurisdictional (*People* v. *Renteria* (1943) 60 Cal.App.2d 463, 469 [328 P.2d 266]), although there the case had been certified to the juvenile court by the superior court, so that certification arguably supplied jurisdiction. Generally, however, lack of authority or capacity to sue does not amount to a jurisdictional defect, depriving the court of power to proceed. (*Danziger* v. *Peebler* (1948) 88 Cal.App.2d 307, 310 [198 P.2d 719]; 1 Witkin, Cal. Procedure (2d ed. 1970) § 183, pp. 712-713.) Here, all necessary parties, the minor, his probation officer and his parents were before the court in the prior proceedings initiated by the section 602 petition, and we therefore opine that the filing of the section 300 petition by improper parties did not deprive the court of such jurisdiction as it otherwise possessed under section 300.

III

*Did the Court Err in Dismissing the Section
602 Petition and Sustaining the Section 300,
Subdivision (c), Petition as a Basis
for Its Jurisdiction?*

The fundamental difference between sections 602 and 300, subdivision (c), is that the one is intended to deal with minors who have committed criminal-type offenses by wardship proceedings, while the other is designed to treat by dependency proceedings "minors physically dangerous . . . because of a mental or physical deficiency, disorder or abnormality."

Section 702,[7] under which commitment was here ordered, makes no special provision for cases in which a minor, charged with criminal conduct by a section 602 petition, is found not guilty by reason of insanity, as has happened in the case at bar.

Under section 702, if the allegations of a section 602 petition are found untrue—arguably for *whatever* reason—the court's jurisdiction under section 602 is terminated. (*In re M.G.S.* (1968) 267 Cal.App.2d 329, 337 [72 Cal.Rptr. 808].) In such event, therefore, continued jurisdiction must be predicated upon some other section. Thus, in *In re Gladys R.* (1970) 1 Cal.3d 855, 865 [83 Cal.Rptr. 671], the court, upon finding a young child lacked the requisite capacity to commit a crime, i.e., "possessed knowledge of its wrongfulness under [Welf. & Inst. Code] sections 602 and [Pen. Code] 26," concluded that the child might be declared a ward under sections 600 (now a dependent child under § 300) or 601. The court here—faced with an admittedly most difficult question—appears to have followed an analogous course in order to preserve its jurisdiction.

In 1978, however, the Legislature provided juvenile courts with a means of continuing jurisdiction in order to properly dispose of cases involving minors found not guilty by reason of insanity. No longer need the court turn to section 300, since section 702.3 now provides it with authority to order appropriate psychiatric treatment, including *indefinite*

---

[7]Section 702 provides in part: ". . . the court shall make a finding . . . whether or not the minor is a person described by sections 300, 601 or 602. If it finds that the minor is not such a person, it shall order that the petition be dismissed and the minor be discharged from any detention or restriction theretofore ordered. If the court finds that the minor is such a person, it shall make and enter its findings and order accordingly, and shall then proceed to hear evidence on the proper disposition to be made of the minor. . . ."

commitment to a mental health facility. Thus, section 702.3 provides, in relevant part: "Notwithstanding any other provision of the law: [¶] (a) When a minor denies, by a plea of not guilty ·by reason of insanity, the allegations of a petition filed pursuant to Section 602 . . . and also joins with that denial a general denial of the conduct alleged in the petition, he shall first be subject to a hearing as if he had made no allegation of insanity. If the petition is sustained or if the minor denies the allegations only by reason of insanity, then a hearing shall be held on the question of whether the minor was insane at the time the offense was committed. [¶] (b) If the court finds that the minor was insane at the time the offense was committed, the court, unless it shall appear to the court that the minor has fully recovered his sanity, shall direct that the minor be confined in a state hospital for the care and treatment of the mentally disordered or any other appropriate public or private mental health facility approved by the county mental health director, or the court may order the minor to undergo outpatient treatment as specified in Section 1026.1 of the Penal Code. . . ."

Petitioner argues forcefully from the language of this section that, by analogy to the provisions governing adult offenders, a determination of guilt—*objective* guilt at any rate—is a necessary concomitant to any commitment, and that the finding of "guilt" is improperly extinguished by dismissal of the section 602 petition. Only when the minor enters a plea of not guilty by reason of insanity, or when the section 602 petition is sustained upon a finding of "guilt," does a sanity hearing take place. If the former plea is made, it functions as an admission of the charged offense (Pen. Code, § 1016, subd. (6)); while, in case of a conjoint plea, the question of guilt is the first determination in bifurcated proceedings.

That the Legislature intended to make disposition and custody correlative in such cases is apparent from the following language of the legislative counsel's notes on section 702.3: "Existing juvenile court law provides that if the court finds that a minor is not a person coming within the criteria established for a declaration of wardship on the basis of criminal conduct the court is required to order that the petition for wardship be dismissed and the minor discharged from any detention or restriction. [¶] If an adult pleads not guilty of a crime by reason of insanity and joins it with another plea he is tried as if he had only entered such other plea and if found guilty is then afforded a trial on the insanity issue and if an adult is found to be not guilty of a crime by virtue of the fact that he was insane at the time the act was committed, unless it appears to the court that he has fully recovered his sanity, existing law

requires his detention or treatment until his sanity has been finally determined as provided by law. [¶] This bill would establish analogous procedures with regard to minors with respect to pleas and treatment. . . ."

In adult proceedings under Penal Code section 1026, where the ultimate determination is that the accused is not guilty by reason of insanity, the initial determination of guilt made in the bifurcated proceeding persists. (*People* v. *Mallory* (1967) 254 Cal.App.2d 151, 156 [61 Cal.Rptr. 825].) As said in *Mallory,* the principal purpose of such a rule is the protection of the public from "insane persons who have been proved to possess criminal tendencies," a precept which in our view applies with equal force of logic to juvenile *and* adult offenders, and which in the absence of a constitutionally valid legislative command we feel compelled to adopt.

As earlier stated, the practical result of adoption of the contrary position is plain: since the charge was dismissed, the defendant would be released from custody, and because of a lack of jurisdiction no psychiatric commitment could be ordered. (§ 600; Pen. Code, § 1384.)

Whether the petition be viewed as sustained and in effect suspended when the minor is found not guilty by reason of insanity, or declared "not true" by reason of such finding, we hold that a finding of not guilty by reason of insanity on a section 602 petition does not per se deprive the juvenile court of the power to make an otherwise valid commitment order under section 702.3, and that such petition carries with it continuing jurisdiction justifying disposition under the latter section.

## IV

*Did the Juvenile Court Exceed Its*
*Jurisdiction by Making an Indefinite*
*Commitment Pursuant to a Finding of Mere Dependency?*

■ In the present case the court's commitment under section 702.3 would permit an indefinite period of confinement not to exceed the age limit of juvenile jurisdiction. Section 702.3 makes no reference to section 300 dependent children, but refers only to minors found not guilty by reason of insanity after establishment of an offense charged in a section 602 petition. If, therefore, the section 602 petition were properly dismissed, the section 702.3 commitment was beyond the power of the court based upon any purported jurisdiction derived from section 300.

Moreover, the inapplicability of section 300 to cases involving criminal activity becomes manifest when one considers that indefinite involuntary commitment is itself unlawful with respect to merely *dependent* children. (*In re L.L.* (1974) 39 Cal.App.3d 205, 213 [114 Cal.Rptr. 11].) Generally, a section 300 dependent may be involuntarily committed only as provided in sections 6550 and 6551 (*In re Michael E.* (1975) 15 Cal.3d 183, 193 [123 Cal.Rptr. 103, 538 P.2d 231]), which provide for relatively brief periods of involuntary commitment and restricted bases for extensions of such commitment.

Apart, then, from the continuing jurisdictional basis flowing from the order sustaining the original section 602 petition, we find no such basis for the questioned order.

*The Alleged Ex Post Facto*
*Affect of Section 702.3*

■ The real party has raised, and petitioner has answered, the contention that application to him of section 702.3 is an unconstitutional ex post facto application of legislation.

Section 702.3 was approved on September 19, 1978, and became law on January 1, 1979. The minor committed the subject offense on February 22, 1978, and the factual allegations of the section 602 petition were found to be true on August 31, 1978, although his commitment under section 702.3 was not ordered until January 19, 1979.

As noted above, prior to the enactment of section 702.3 a minor charged in wardship proceedings with criminal conduct and found not guilty by reason of insanity arguably could not be detained further by the juvenile court. (*In re Gladys R., supra,* 1 Cal.3d 855; *In re M.G.S., supra,* 267 Cal.App.2d 329.) Instead, the court could institute involuntary 14-day commitments to a state mental hospital (§§ 6550, 6551) and any involuntary commitment thereafter could be had only along the exiguous procedural guidelines set out in the Lanterman-Petris-Short Act. (§ 5330 et seq.; cf. *In re Michael E., supra,* 15 Cal.3d 183, 189-190; *In re L.L., supra,* 39 Cal.App.3d 205, 210.)

Section 702.3 was intended to and does change this procedure, clarifying—at least prospectively—the murky situation which here confronted the trial court. If, however, its effect on real party is essentially penal, its retroactive application would in our view be illegal. ■ As

said in *People* v. *Sobiek* (1973) 30 Cal.App.3d 458, 472 [106 Cal.Rptr. 519] [cert. den., 414 U.S. 855 (38 L.Ed.2d 104, 94 S.Ct. 155, 82 A.L.R.3d 804)]: "A statute has an ex post facto effect when it alters the situation of an accused to his disadvantage by: (a) making criminal an action innocent when done; (b) making more serious an act already criminal when done; (c) inflicting greater punishment than that attending the act at the time it was committed; or (d) permitting a person to be convicted with less evidence than was required when the act was done. [Citations.] The doctrine does not apply to trivial matters but to some vested and substantial right possessed at the time of the offense." (Cf. *In re Moye* (1978) 22 Cal.3d 457, 465 [149 Cal.Rptr. 491, 584 P.2d 1097]; *In re Roger S.* (1977) 19 Cal.3d 921, 927 [141 Cal.Rptr. 298, 569 P.2d 1286]; *In re Valenzuela* (1969) 275 Cal.App.2d 483, 486 [79 Cal.Rptr. 760].)

■ The People argue in their response to real party's return to the petition for mandamus that real party's right, prior to enactment of section 702.3, to have any involuntary commitment conducted in accordance with the guidelines of the Lanterman-Petris-Short Act—with its numerous procedural safeguards—is "insubstantial," because section 702.3 was merely enacted to "plug a hole" in juvenile commitment proceedings.

We disagree. The interest at stake in the present proceeding is the real party's debated *right* to remain free from incarceration for *an indefinite period* to the point of termination of juvenile jurisdiction. Therefore, if the potential length of detention were to be the measure of the substantiality of real party's right, we would readily concede that he had been substantially affected by the amended section. But there is a compelling reason apart from the practical impact of section 702.3 for finding that retroactive application of that section to real party is not unconstitutional; namely, that the commitment, like analogous provisions of Penal Code section 1026, is not punitive in nature, its purpose being curative and protective. In the words of *People* v. *Mallory, supra,* 254 Cal.App.2d 151: "The restraint imposed by these sections is not for the purpose of punishment but is for the protection of the public from insane persons who have been proved to possess criminal tendencies." (P. 156.) It has been said, too, that the real purpose of the insanity defense permitted by the Legislature is not primarily to determine whether the defendant was capable of harboring the requisite mens rea, but to determine whether he should be *punished* in the light of his mental condition at the time of the offense. (*People* v. *Ellis* (1929) 206 Cal. 353, 357 [274 P. 353]; *People* v. *Hickman* (1928) 204 Cal. 470, 476 [268 P. 909];

*People* v. *Bales* (1974) 38 Cal.App.3d 354 [113 Cal.Rptr. 141].) Since punishment is essentially a mode of vindicating the violation of others' rights, to impose punishment upon those not responsible for their acts—those by definition lacking in mens rea or "guilty minds," is meaningless. But a finding that one is not guilty by reason of insanity in no sense implies that, being legally innocent, one ought to be unconditionally freed; particularly where, as here, the threat of violence is actual and imminent. At the same time, contrary to the real party's claim and the prosecution's alleged interest, there is no legal stigma of criminality attached to real party because he was not accused, and does not stand convicted of, a crime.

Our conclusion, therefore, is that retroactive application of section 702.3 is not an ex post facto law because it not only does not inflict *greater* punishment than that which obtained at the time the act was committed, but in fact inflicts no punishment at all. It provides instead for a different and less cumbersome mode of detention and treatment for mental disorder; for periodic review of the minor's sanity by the court; and for release upon proof that the condition which rendered the minor insane no longer obtains. The notion that this new method is punitive per se because it may result in longer detention, we reject as false.

*The Effect on Jurisdiction*
*of the Insanity Finding*

■ Real party's final contention is that reinstatement of the dismissed section 602 petition is unnecessary to support the court's disposition under section 702.3 since the factual finding of guilt at the first stage of the section 702.3 hearing—that the minor committed second degree murder—is sufficient to confer jurisdiction to make the section 702.3 commitment on a finding of the minor's insanity at the time of the offense.

Logically, the problem is a perplexing one. Section 702.3 directs that an insanity hearing shall be held only where the 602 petition is "sustained." Subdivision (b) thereof addresses a situation in which the allegations of a petition are found to be "true" before the insanity hearing is held. Such was the case here, it having been found that the minor committed the acts alleged, and that by analogy to adult provisions of the Penal Code they constituted second degree murder. Only subsequently did the court determine that, since the minor was insane at the time of the offense, the allegations of the petition were "not true," thus leading to the jurisdic-

tional dilemma before us, because section 702 provides that if a person is not of the class described by section 602 *the* (i.e., the § 602) petition must be dismissed.[8]

Is the minor such a person?

As suggested by Justice Elkington in *People* v. *Bales, supra,* 38 Cal.App.3d 354, the resolution of the issue depends ultimately upon one's view of the rationale underlying the insanity defense: "Differing views may reasonably be taken whether the Penal Code section 1026 inquiry into an insanity plea relates to the *guilt* of the accused, or simply to the question of *punishment* for guilt which has already been admitted, or found. [¶] Certainly, if it be postulated that an accused, insane at the time of the act in question and therefore without *mens rea,* is *not guilty* of crime, it would reasonably follow that one's sanity, and therefore *guilt,* should be determined by a unanimous verdict. [¶] But if a finding at a Penal Code section 1026 hearing that an accused is sane, amounts to a final determination of his *guilt,* very curious results follow. For there the accused's sanity, and hence his *guilt,* is presumed (*In re Dennis* (1959) 51 Cal.2d 666, 673 . . .), and the burden rests upon him to prove otherwise (Evid. Code, § 522; *In re Franklin* (1972) 7 Cal.3d 126, 141 . . .). On such an inquiry into his *guilt* the presumption of innocence is not available to him (*People* v. *Harmon* (1952) 110 Cal.App.2d 545, 554 . . .), and he may be found *guilty* by a bare preponderance of the evidence. (*People* v. *Monk* (1961) 56 Cal.2d 288, 297. . . .) [¶] A contrary rationale considers that the so-called 'insanity defense' is not truly a defense at all. Instead its purpose is to determine whether the accused shall be *punished* for the *guilt* which has already been established. This rationale was followed in *People* v. *Ellis* (1929) 206 Cal. 353, 357-358 . . . where the court stated: 'To denominate the plea of insanity a "defense" to crime is not strictly accurate. More correctly it is a special plea to the effect that, assuming the homicide to have resulted from the act of the defendant, he is not amenable to punishment under the law. . . .' (See also *Baer* v. *Smith* (1945) 68 Cal.App.2d 716, 723. . . .) In *People* v. *Hickman* (1928) 204 Cal. 470, 476 . . . the court had previously found that Penal Code section 1026 preserved to an accused 'the right to submit to a jury the issue that he should not be punished because he was insane at the time he committed the act, . . .' (See also *People* v. *Pincus* (1933) 131 Cal.App. 607, 609-610. . . .)" (38 Cal.App.3d at pp. 356-357.)

---

[8]As noted above, real party in effect concedes the continuity of jurisdiction based on the original finding of guilt.

As earlier indicated, we think the better view is that, for a minor as for an adult, the insanity hearing after a finding of *objective* guilt does not extinguish the fact of the commission of an offense otherwise condemned as a crime. Instead, it is a means of determining whether the actor should be legally blamed for his conduct. If insane at the time of the conduct, he is neither to be blamed nor punished but detained and treated until cured. (Cf. *People* v. *Mallory, supra,* 254 Cal.App.2d 151, 156-157.) Such, we note is the present legislative scheme underlying the bifurcated Penal Code section 1026 proceedings, which permit indefinite detention of those adult offenders found *"not guilty"* by reason of insanity.

We, accordingly, conclude that the court's initial factual sustaining of the section 602 petition and the subsequent finding of insanity by themselves support the assertion of jurisdiction pursuant to section 702.3. The court's dismissal of the petition after the insanity finding we therefore find to be unnecessary but not improper, since the continuity of the petition was unnecessary as a jurisdictional predicate.

Let a peremptory writ of mandate issue compelling the juvenile court to dismiss the section 300, subdivision (c), petition and modifying its order of January 18, 1979, to show that the factual basis of the section 602 petition was found to be true on August 31, 1978, and that the minor was found to be insane at the time of the offense, and presently insane at the hearing of December 12, 1978, and that upon such findings the order of commitment made pursuant to section 702.3 was proper. The order of dismissal made January 17, 1979, is vacated.

Racanelli, P. J., and Elkington, J., concurred.

A petition for a rehearing was denied August 22, 1979, and the petition of real party in interest for a hearing by the Supreme Court was denied September 26, 1979.