[Civ. No. 4449. Fifth Dist. Dec. 6, 1979.]

In re VICKI H., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
VICKI H., Defendant and Appellant.

## COUNSEL

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, Ezra Hendon, Chief Assistant State Public Defender, Laurance S. Smith and Mark E. Cutler, Deputy State Public Defenders, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, Joel Carey and Shirley A. Nelson, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**ZENOVICH, J.**—A petition filed in San Luis Obispo County Superior Court alleged that appellant, Vicki H., a minor, came within the provisions of Welfare and Institutions Code section 602[1] because of the commission of an assault with a deadly weapon (Pen. Code, § 245, subd. (a)) and of a battery resulting in serious bodily injury (Pen. Code, §§ 242, 243) charged as felonies. Appellant appeared at a detention hearing and was ordered detained pending her jurisdictional hearing.

---

[1]All references are to the Welfare and Institutions Code unless otherwise indicated.

Thereafter, the court denied a motion made under section 707, finding appellant fit for treatment as a juvenile. The court also found that Vicki was competent and able to assist her counsel in the conduct of her defense.

The jurisdictional hearing was held and appellant entered a plea of not guilty by reason of insanity. Based upon reports by two examining physicians, Drs. Shaiken and Chisholm, the court found that appellant was insane at the time the offenses were committed and that she had not fully recovered her sanity. A dispositional hearing was held immediately, and the court ordered appellant to be placed in the San Luis Obispo Department of Mental Health for 72-hour treatment and evaluation pursuant to section 6551.

Thereafter, the court held a further dispositional hearing, at which time the court declared appellant a ward, removed her from the custody of her parents, committed her to the California Youth Authority (CYA) for four years, and then suspended the CYA commitment contingent upon appellant voluntarily making application for admission to Camarillo State Hospital for inpatient mental health services pursuant to section 5003. Appellant agreed to this dispositional order.

Thereafter, a report and petition for modification was filed because Vicki had refused to remain voluntarily at Camarillo State Hospital in violation of the court's dispositional order. Further dispositional hearings were held during which the court heard testimony that appellant was not gravely disabled within the meaning of the Lanterman-Petris-Short (LPS) Act, codified in section 5000 et seq.

These further hearings resulted in a set of findings modifying the order which declared appellant a ward of the juvenile court. The court found that Vicki was in need of intensive long-term care for mental disorders and disabilities, but that she was not gravely disabled nor a danger to others. Nevertheless, the court also held that: (1) Vicki was a danger to herself within the purview of sections 5000-5401; and (2) involuntary commitment under the LPS Act was not appropriate because segmented treatment would be detrimental to the effective treatment and the best interest of the minor. Furthermore, the court determined that there were no appropriate placement facilities for appellant in San Luis Obispo County, that the CYA was not a suitable alternative for appellant's condition, and that it had exhausted all procedures which relate to the care and treatment of juvenile wards.

In accordance with its factual findings and legal conclusions, the court ordered that appellant continue as a juvenile ward and removed her from the custody of her parents pursuant to section 726. Moreover, the court committed appellant to the custody of the California Department of Developmental Services for placement at Patton State Hospital "pursuant to section 1026 of the Penal Code, section 702.3 of the Welfare & Institutions Code (effective January 1, 1979) and the doctrine of *James H.* v. *Superior Court,* 77 Cal.App.3d 169." The commitment was for a period not to exceed four years.

Appellant filed a timely notice of appeal.

The facts of the case are not in dispute. During the evening of August 10, 1978, Vicki entered her grandmother's bedroom and found her grandmother sitting in bed. With her hands behind her back, appellant told her grandmother to close her eyes because she had a surprise for her. Although the grandmother refused to cooperate with such a request, Vicki proceeded to stab her in the chest with a knife. Vicki was arrested shortly after the stabbing and was observed to be in a dazed state of mind. Appellant's grandmother was hospitalized with moderate injuries.

At the final dispositional hearing, there was testimony tending to show that there were no available facilities for dealing with Vicki's situation. Furthermore, the court found that appellant was not gravely disabled under the provisions of the LPS Act (§ 5000 et seq.) precluding any conservatorship proceedings under the act. Because these facts severely restricted the legal avenues available for appellant's treatment and care, the court fashioned a judicial remedy which retroactively applied section 702.3, which became effective on January 1, 1979. This section provides that a minor adjudged criminally insane at the time an offense underlying a section 602 petition was committed shall be confined in a state hospital for the care and treatment of the mentally disordered or any appropriate public or private mental health facility approved by the county mental health director.[2] These procedures are analogous to those found in Penal Code section 1026. The propriety of this remedy is at issue in this case.

[2]Section 702.3 states in pertinent part: "Notwithstanding any other provision of the law:

"(a) When a minor denies, by a plea of not guilty by reason of insanity, the allegations of a petition filed pursuant to Section 602 of the Welfare and Institutions Code, and also joins with that denial a general denial of the conduct alleged in the petition, he shall first be subject to a hearing as if he had made no allegation of insanity. If the

■ At the outset, appellant contends that the juvenile court did not have jurisdiction over her under section 602 once it found her legally insane. We agree.

Section 602 gives jurisdiction to a juvenile court for the purpose of adjudging a minor as a ward of the court "when he violates any law of this state or of the United States...." The California Supreme Court has recognized that insanity is a defense in a juvenile court section 602 proceeding. (*In re Ramon M.* (1978) 22 Cal.3d 419, 423, fn. 3 [149 Cal.Rptr. 387, 584 P.2d 524], citing *In re M.G.S.* (1968) 267 Cal. App.2d 329, 336 [72 Cal.Rptr. 808].) This defense has jurisdictional importance, as noted by the Court of Appeal in *In re M.G.S., supra,* at page 337: "Any relevant matter or information which supports a finding that the minor was legally incapable of committing the acts alleged in the [section 602] petition because of insanity (Pen. Code, § 26, subd. 3), *ousts the juvenile court of jurisdiction to proceed further on the petition insofar as it relates to section 602.* [Citations.]" (Italics added.)

Thus, *M.G.S.* establishes that the insanity defense divests the juvenile court of jurisdiction once it is successfully proven. The *M.G.S.* court also suggested that the juvenile court might predicate jurisdiction on section 300, subdivision (c) (formerly § 600, subd. (c)), which allows the court to adjudge a minor to be a ward "Who is physically dangerous to the public because of a mental or physical deficiency, disorder or abnormality."

Although *M.G.S.* undercuts jurisdiction upon an insanity determination, another result was recently suggested by the court in *People* v. *Superior Court (John D.)* (1979) 95 Cal.App.3d 380 [157 Cal.Rptr. 157]. In that case, the court retroactively applied section 702.3 and suggested that there is continuing jurisdiction under section 602 in spite of a finding of insanity. Notwithstanding its apparent applicability, we believe that the jurisdictional theory of *John D.* cannot be utilized in the present case.

---

petition is sustained or if the minor denies the allegations only by reason of insanity, then a hearing shall be held on the question of whether the minor was insane at the time the offense was committed.

"(b) If the court finds that the minor was insane at the time the offense was committed, the court, unless it shall appear to the court that the minor has fully recovered his sanity, shall direct that the minor be confined in a state hospital for the care and treatment of the mentally disordered or any other appropriate public or private mental health facility approved by the county mental health director, or the court may order the minor to undergo outpatient treatment as specified in Section 1026.1 of the Penal Code."

In the *John D.* setting, the minor committed the criminal offense on February 22, 1978, the factual allegations of the section 602 petition were found true on August 31, 1978, *and commitment was ordered under section 702.3 on January 19, 1979. (People* v. *Superior Court (John D.), supra,* 95 Cal.App.3d at p. 392.) In Vicki's case, however, the crime occurred on August 10, 1978, the section 602 factual disposition happened on October 5, 1978, and commitment was ordered by the juvenile court on October 5, 1978. The fundamental difference between the two cases lies with the fact that section 702.3 was *in existence* before the commitment determination in *John D.* The court in *John D.* could retroactively apply section 702.3 because that provision was the law as of January 1, 1979.

The instant situation does not appear amenable to retroactive treatment, since it would involve application of legislation before its effective date. This is tantamount to judicial passage of urgency legislation, contravening the state constitutional principle that "a statute enacted at a regular session shall go into effect on January 1 next following a 90-day period from the date of enactment. . . ." (See Cal. Const., art. IV, § 8, subd. (c).) We refuse to violate such a constitutional mandate.

Having decided appellant's case diverges from *John D.*, it would be inappropriate to invoke *John D.*'s jurisdictional theory. The court in that case held that an insanity adjudication did not extinguish jurisdiction based on an in tandem construction of sections 602 and 702.3. The court said: "[W]e hold that a finding of not guilty by reason of insanity on a *602 petition* does not per se deprive the juvenile court of the power to make an otherwise valid commitment order *under section 702.3,* and that such petition carries with it continuing jurisdiction justifying disposition under the latter section.

" . . . . . . . . . . . . . . .

"We, accordingly, conclude that the court's initial factual sustaining of the 602 petition and the subsequent finding of insanity by themselves support the assertion of jurisdiction *pursuant to 702.3.* The court's dismissal of the [602] petition after the insanity finding we therefore find to be unnecessary *but not improper, since the continuity of the petition was unnecessary as a jurisdictional predicate." (People* v. *Superior Court (John D.), supra,* 95 Cal.App.3d at pp. 391, 396, italics added.) In the instant situation, however, section 702.3 was not operational leg-

islation. Thus, it was proper to apply the jurisdictional approach which was law at the time of Vicki's 1978 commitment by the juvenile court rather than *John D.*'s *in pari materia* analysis. Under this approach, which was articulated in *M.G.S.*, it was error to find Vicki "to be a person described by section 602 of the Juvenile Court Law at the jurisdictional hearing," since jurisdiction was divested after the insanity adjudication.

Although *M.G.S.* appears to be the preferable jurisdictional stance here, *John D.* does contain potential seeds of confusion. Assuming that *John D.* is correct (meaning that jurisdiction under § 602 is not extinguished in insanity cases), the juvenile court here could arguably vacate its 1978 order and enter a new commitment order upon remand in 1979. This action would be predicated upon the retroactive application of section 702.3 as accomplished under the authority of *John D.* ██ Under the premise that *John D.*'s jurisdictional theory may be correct and in order to provide guidance for the juvenile court, we now address whether section 702.3 can be extended retroactively on remand.

Notwithstanding our belief that *M.G.S.* ended the juvenile court's jurisdiction over the section 602 petition, it is pertinent to examine the retroactivity issue because of the legal uncertainty introduced by *John D.* We have concluded that section 702.3 was not intended to be applied in a retroactive fashion even if the juvenile court had continuing jurisdiction.

*John D.* did determine that retroactive application of section 702.3 does not affront ex post facto principles because its commitment procedure is curative, rather than penal, in nature. (*People v. Superior Court (John D.), supra,* 95 Cal.App.3d at pp. 393-394.) The court did not, however, explore any of the factors which would indicate whether the Legislature intended to retroactively apply this provision. When public policy statements and legislative committee remarks are considered, it appears that the Legislature contemplated *prospective* application of section 702.3.

██ The California Supreme Court has held that legislative enactments are generally presumed to operate prospectively and not retroactively if, after considering all relevant factors, it is determined that it is impossible to ascertain legislative intent. (*In re Marriage of*

*Bouquet* (1976) 16 Cal.3d 583, 587 [128 Cal.Rptr. 427, 546 P.2d 1371]; *In re Estrada* (1965) 63 Cal.2d 740, 746 [48 Cal.Rptr. 172, 408 P.2d 948]; accord *City of Sausalito* v. *County of Marin* (1970) 12 Cal. App.3d 550, 557 [90 Cal.Rptr. 843].) The type of factors which may illuminate legislative design include context, the object in view, the evils to be remedied, the history of the times and of legislation upon the same subject, public policy, and contemporaneous construction. (*In re Marriage of Bouquet, supra,* 16 Cal.3d at p. 587, citing *Alford* v. *Pierno* (1972) 27 Cal.App.3d 682, 688 [104 Cal.Rptr. 110] and *Estate of Ryan* (1943) 21 Cal.2d 498, 513 [133 P.2d 626].)

■ Although the direct language of the amendment does not provide insight, expressions of public policy give some illumination of the legislative intent. Several commentators had gravely indicated that, before passage of section 702.3, the dispositional avenues available to the juvenile court when dealing with a dependent child are insufficient when dealing with a juvenile criminal offender who evaded the court's jurisdiction under section 602. (See *Review of Selected 1978 California Legislation* (1978) 10 Pacific L.J. 247, 531-532; Roos & Ellison, *The Mentally Ill Juvenile Offender: Crisis for Law and Society* (1975) 51 L.A. Bar J. 263, 265-266.) Prior to the 1978 enactment, it had been further noted that some juvenile courts might have concluded that a minor did not fall into any permissible statutory classification and proceeded to release the minor to the community without treatment. (*In re Gladys R.* (1970) 1 Cal.3d 855, 871 [83 Cal.Rptr. 671, 464 P.2d 127]; Assemblyman Mike Antonovich (author of the bill which was enacted as § 702.3), Press Release, June 21, 1978; Roos & Ellison, *The Mentally Ill Juvenile Offender: Crisis for Law and Society, supra,* 51 L.A. Bar J. at p. 266.) In response to these public outcries, the Legislature apparently enacted section 702.3 in order to prevent further releases of insane minors. This interpretation is supported by the legislative comment accompanying the bill while in the California Senate Committee on Judiciary, which stated in pertinent part: "According to the author [Assemblyman Mike Antonovich], this bill would prevent minors from being discharged from detention because they are found to be insane at the time they committed criminal acts. The author cites a case in which a 14 year old boy killed his mother and then 'beat the system' by studying psychiatric books to fake mental disorders (insanity) which then resulted in the dismissal of the Sec. 602 petition filed on him, and in his subsequent release.

"Proponents contend that the bill is necessary in order for minors found to be insane to be committed for treatment which they need." (Juvenile Court Law: Comment, Sen. Com. on Judiciary (1977 Reg. Sess.) legislative analysis of Assem. Bill No. 3480 (Antonovich).) ▮ Besides expressions of public policy, committee reports on a bill are also entitled to some weight in gauging legislative intent. (See *In re Marriage of Bouquet, supra,* 16 Cal.3d at pp. 590-591.) ▮ Statements of public policy from concerned commentators and a legislative committee report both appear to indicate that section 702.3 was to be applied *prospectively* in dealing with minors adjudged insane under a section 602 petition. In absence of evidence to the contrary, the presumption against retroactive application of legislative enactments such as section 702.3 should be adhered to in appellant's case.

Therefore, we are of the opinion that, in the absence of legislative intent to retroactively apply section 702.3, the juvenile court cannot utilize this section for commitment of appellant even if it had jurisdiction under the auspices of *John D.*

▮ Notwithstanding the error in proceeding under section 602, respondent contends that the juvenile court had jurisdiction over appellant under section 300, subdivision (c), or similar provisions. According to respondent, this renders any jurisdictional error harmless. Such a contention cannot be sustained, since other jurisdictional bases were precluded by the court's findings. Assuming arguendo that respondent is correct, the juvenile court must still be reversed because it did not meet the statutory prerequisites for committing appellant to a state hospital on a long-term basis.

Respondent's suggestion that there were other predicates for jurisdiction is undercut by the court's own findings. First, section 300, subdivision (c),[3] was precluded as a jurisdictional base when the court determined that appellant was not a danger to others. Second, the record does not disclose any evidence suggesting the applicability of

---

[3]Section 300 provides in pertinent part: "Any person under the age of 18 years who comes within any of the following descriptions is within the jurisdiction of the juvenile court which may adjudge such person to be a dependent child of the court:

". . . . . . . . . . . . . . . .

"(c) Who is physically dangerous to the public because of a mental or physical deficiency, disorder or abnormality."

section 601.[4] Since sections 300, subdivision (c), 601 and 602 are not proper jurisdictional bases, appellant could not have been exposed to the procedures for the evaluation of a ward's mental state as provided in section 6551.[5] This demonstrates that commitment pursuant to section 602 was prejudicial to appellant, since she would otherwise have been entitled to dismissal of the original petition.

■ Even though the superior court lacked jurisdiction to sit as a juvenile court, involuntary detention or commitment can be accomplished under the LPS Act where the person "as a result of mental disorder, is a danger to others, or to himself, or gravely disabled,..."(§§ 5150, 5152, 5200, 5250, 5300.) In the present case, the court found that, although the minor was neither gravely disabled nor a danger to others, she was a danger to herself within the purviews of the LPS Act. This finding is amply supported by the record. Therefore, it appears that LPS procedures might apply to appellant, since she demonstrated suicidal tendencies threatening her own well-being.

The LPS Act's civil commitment scheme[6] provides for short-term detention of mentally disordered individuals. Before a person is committed for prolonged periods, however, the act mandates that the patient either voluntarily submit to further treatment, be under the control of a temporary conservator appointed pursuant to section 5350, or fall within

---

[4]Section 601, subdivision (a), provides: "Any person under the age of 18 years who persistently or habitually refuses to obey the reasonable and proper orders or directions of his parents, guardian, or custodian, or who is beyond the control of such person, or who is under the age of 18 years when he violated any ordinance of any city or county of this state establishing a curfew based solely on age is within the jurisdiction of the juvenile court which may adjudge such person to be a ward of the court."

[5]As section 6550 makes clear, the evaluation procedures in section 6551 are not triggered unless the juvenile court has initially found the minor to be a person described by section 600 (now § 300), 601 or 602. For a discussion of this evaluation procedure see *In re L. L.* (1974) 39 Cal.App.3d 205, 212 [114 Cal.Rptr. 11].

[6]The LPS Act provides that, upon written application by certain individuals or under a superior court order, mentally disordered persons may be taken into custody and placed in a facility designated by the county and approved by the State Department of Mental Health as a facility for 72-hour treatment and evaluation. (§§ 5150, 5200.) Thereafter, any person detained for 72 hours may be certified for not more than 14 days of involuntary intensive treatment under certain circumstances. (§ 5250.) The person can also be committed for an additional 14-day period if it is found that he presents an imminent threat of taking his own life, that he has been advised of voluntary treatment, that the facility providing intensive treatment is equipped and agrees to handle the case, and that he has threatened or attempted to take his own life during previous detentions. (§ 5260.) After the 14-day or 28-day periods, persons cannot be involuntarily committed for a longer time span unless one of the following conditions apply: (1) patients agree to receive further treatment on a voluntary basis; (2) patients

sections 5260 or 5300. (§ 5254.) The record supports the conclusion that appellant would not fall within the classifications outlined in sections 5260 or 5300.[7] There is also no dispute that appellant requested release from her voluntary commitment to Camarillo State Hospital. Furthermore, the court could not legally initiate conservatorship proceedings in accordance with the LPS Act on appellant's behalf.

In *In re Michael E.* (1975) 15 Cal.3d 183 [123 Cal.Rptr. 103, 538 P.2d 231], the court summarized the protections provided to detained minors: "The actual commitment of a minor ward of a juvenile court to a state hospital can be lawfully accomplished only through the appointment of a conservator who is vested with authority to place the minor in such a hospital. (LPS Act, ch. 3, §§ 5350-5370.) Such conservator may be appointed only for a 'gravely disabled' minor who is entitled to a jury trial on the issue whether he is in fact 'gravely disabled.' [Citation.]" (*In re Michael E., supra,* at p. 192, fn. omitted.) Because the juvenile court had ruled appellant not gravely disabled at the dispositional hearings, it was precluded from initiating conservatorship proceedings. Since this removed the last statutory base for long-term commitment, the court erred when it sent appellant to a state hospital for further treatment and care.

Therefore, we are of the opinion the juvenile court had no statutory jurisdiction over appellant and, even if it did, no basis for ordering long-term commitment under the LPS Act.

In spite of the lack of jurisdiction, respondent contends that the juvenile court has the inherent power to commit a troubled minor in a state hospital through retroactive application of section 702.3, which did not become effective until after appellant's petition was decided. For the reasons that follow, respondent's contention appears to ignore several pertinent factors.

---

have had a temporary conservator appointed pursuant to chapter 3 (commencing with § 5350); or (3) patients fall within article 6 (commencing with § 5300). (§§ 5254, 5264.) At the expiration of the 14-day period of intensive treatment, section 5300 sanctions additional treatment for up to 90 days if the person posed an imminent threat of inflicting substantial physical harm to others. (§ 5300.) Additional treatment of 90 days can similarly be ordered under section 5304.

[7]Although appellant demonstrated suicidal tendencies, sections 5260 and 5300 cannot be utilized for long-term commitment unless there are adequate facilities for treatment. (§ 5260, subd. (c).) The record amply demonstrates that there were no county facilities which could adequately meet appellant's needs. In addition, the possibility of using section 5300 was mitigated by the juvenile court's finding that appellant was not a danger to others.

■ First, it should be noted that the juvenile court cannot fashion remedies unless it has jurisdiction over the matter. (Cf. *In re M.G.S., supra,* 267 Cal.App.2d at p. 337 [insanity divests juvenile court of jurisdiction to proceed on petition under § 602].) Unless the court can overcome this hurdle, its remedy for appellant's condition has been rendered nugatory.

Second, assuming that jurisdiction exists, respondent misconstrues the nature of the inherent power of a juvenile court to fashion judicial remedies. In formulating appellant's commitment order, the court noted that it had exhausted all procedures reasonably available for the care and treatment of juvenile wards and had no statutory procedure which would adequately provide for appellant's mental disorder. This conclusion appears to be supported by the record's discussion of alternatives. In order to remedy this deficiency, the court retroactively applied section 702.3, which did not become effective until January 1, 1979. Respondent suggests that the court had the power to fashion such an order pursuant to the rationale contained in *James H.* v. *Superior Court* (1978) 77 Cal.App.3d 169 [143 Cal.Rptr. 398]. This contention appears to be an overly expansive extension of *James H.*

In *James H.,* the Court of Appeal held that, in the absence of any statutory procedure for so doing, the juvenile court has the inherent power to determine a minor's mental competence to understand the nature of proceedings pending under section 707, subdivision (b), and to assist counsel in a rational manner at that hearing. (*James H.* v. *Superior Court, supra,* 77 Cal.App.3d at p. 172.) The court stressed that a minor is entitled to a competency hearing because "Due process demands that a person constitutionally entitled to the right to effective counsel[8] be afforded a hearing as to his competency to cooperate with that counsel." (At p. 174.) The fact that a *constitutional* guarantee was implemented by the juvenile court in *James H.* was emphasized by the Court of Appeal: "Throughout the years following *Kent* [*Kent* v. *United States* (1966) 383 U.S. 541 (16 L.Ed.2d 84, 86 S.Ct. 1045) (minor has a right to effective counsel)] and *Gault* [*In re Gault, supra* (minor has a right to counsel in juvenile court as a matter of due process)], juvenile courts throughout the nation have been *improvising procedures to comply with newly announced constitutional mandates* pending action by

---

[8]The court noted that the statutory scheme in California, before and after *In re Gault* (1967) 387 U.S. 1 [18 L.Ed.2d 527, 87 S.Ct. 1428], established counsel for the minor in *all* proceedings which require or permit the minor's participation. (*James H.* v. *Superior Court, supra,* 77 Cal.App.3d at p. 174.)

the Legislature.... [D]uring the period from *Gault* to the present many situations have arisen which have demanded improvisation *to meet changing constitutional requirements.* Without any fuss or commotion, the juvenile courts have done so without recourse to the Legislature or to the reviewing courts." (*James H., supra,* 77 Cal. App.3d at p. 176, italics added.) Thus, *James H.* condones judicially created procedures so long as the juvenile court is furthering *constitutional* mandates.

The juvenile court in the present case retroactively applied section 702.3. Although the juvenile court is to be commended for its concern with appellant's condition, its commitment order did not implement a constitutional safeguard and, as such, is beyond the inherent power of a juvenile court recognized in *James H.* Moreover, the juvenile court's order would result in detention of appellant—a denial of an individual's liberty—which was not existent before passage of section 702.3. Since there would be a deprivation of liberty through retroactive application of section 702.3, appellant would be prejudiced because she would have been released on jurisdictional grounds under the statutes in effect at the dispositional hearings.

The court in *In re L. L., supra,* 39 Cal.App.3d 205 was faced with a similar factual pattern involving a juvenile court which ordered commitment outside of the provisions of the LPS Act. In its disapproval of this practice, the court observed: "In the present case the juvenile court did not invoke the procedures provided for in section 6551 and those provisions of the Act made applicable by that statute; and no conservatorship proceeding was instituted as provided in the Act. Instead the juvenile court made a direct commitment of the minor to Napa State Hospital, a state hospital for the care and treatment of the mentally disordered. (See §§ 4100 and 7200.) Such care and treatment was not voluntarily accepted by the minor or his parents. Accordingly, if the propriety of the order committing the minor to Napa State Hospital must depend upon the authority of the juvenile court to certify the minor for involuntary care and treatment such order... was in excess of the powers of the juvenile court." (*In re L. L., supra,* 39 Cal.App.3d at p. 213.)

Therefore, we are of the opinion that the juvenile court did not have the inherent power to commit appellant in a state hospital outside of the procedures contained in the LPS Act.

Having found the commitment improper, we need not reach the equal protection contention raised by appellant.

The order of the juvenile court is reversed and the minor ordered discharged from any detention in a state hospital under such an order.

Hopper, Acting P. J., and Fretz, J.,* concurred.

*Assigned by the Chairperson of the Judicial Council.